State v. Lipscomb.

---

## THE STATE v. LIPSCOMB, Appellant.

**Division Two, February 12, 1901.**

1. **Criminal Law:** EMBEZZLEMENT BY CLERK: INDICTMENT. It is not necessary that an indictment which charges the clerk of a co-partnership with the embezzlement of money belonging to the firm, should allege the particular kind of business in which the co-partnership is engaged.

State v. Lipscomb.

2. ——: ——: ——: AUTHORITY TO RECEIVE MONEY. An indictment drawn under section 1912, Revised Statutes 1899, charging a clerk with the embezzlement of his employer's money, need not state that the clerk was authorized to receive the money. Under this statute, if the clerk received the money for his employer, he is guilty of a criminal offense, whether or not he had authority to receive the money. Nor is an instruction erroneous which fails to tell the jury that they should find that the clerk had such authority.

3. ——: ——: ADMISSIONS. Admissions of defendant which are made before his arrest, without any promise of immunity from prosecution or flattery of hope, but which are entirely voluntary on the part of defendant, are clearly admissible in evidence, and no error is committed by the court's refusing to exclude such admissions.

4. ——: ——: ——: WHEN ADMISSIBLE: INSTRUCTION. No error was committed in refusing an instruction which told the jury that they should not consider any admissions made by defendant under the advice of the prosecuting witness that "it would be best to tell the truth about it." The use of these words can not be construed as a threat or the flattery of hope. A confession of crime, to be inadmissible, must be made to an officer of the law, in consequence of improper influence exerted by him.

Appeal from Barry Circuit Court.—*Hon. H. C. Pepper,*
*Judge.*

AFFIRMED.

*Cloud & Davis, Davis & Steele* and *C. M. Landis* for defendant.

(1) The indictment in this case is bad for the reason it does not state "the nature and cause of the accusation" against defendant. An accused person is presumed to be innocent of any crime charged against him, and wholly ignorant of any of the circumstances pertaining thereto. The business in which Brown & Son were engaged should have been stated in the indictment, and also that the defendant was authorized

State v. Lipscomb.

to receive money. These allegations were supposed to be inferred by the use of the term "clerk," but the term is generic in its character. Were Brown & Son lawyers or doctors as well as merchants, this indictment, if good at all, would be as sufficient for the one business as for the other. The indictment must individuate the offense. When the common law or statute defines by generic terms, the indictment must descend to particulars. Arch. Crim. Prac. and Plead., sec. 88. Even in the sense of salesman, the term clerk does not imply that the employee is entrusted with money, and authorized to receive and to account for it, nor is this averment made in the indictment under consideration. In embezzlement the master can set out particularly the relations between himself and his servant and he should be required to do so as far as it materially affects the offense or is desirable for its identification. 2 Bishop's New Crim. Proc., sec. 319. All that is to be proved must be alleged and nothing be left to intendment. 1 Bishop's New Crim. Proc., sec. 519. (2) The alleged confession of the defendant in this case is not admissible because the whole of the conversation is not given. It is inadmissible because inducements were offered. A suggestion to a prisoner that it would be better for him to tell the truth, and have no more trouble about it, was held to render the confession incompetent. Gillett, Indirect and Collateral Evidence, sec. 103. Inducements were held out by Brown, and in the presence of Tomlinson, by assuring the defendant that the law would be easier on him, which assurance was made to the defendant at the post-office by Brown and in his capacity as officer and as the injured party, and for this reason was clearly inadmissible. (3) The *corpus delicti* in this case was not proved. The law requires open and visible connection between the principal and evidentiary facts and deductions from them, and does not permit a decision to be made on remote inferences. U. S. v. Ross, 92 U. S. 281.

Had Brown been able to show a deficiency in his profits, it would not have been proof of any criminal act. Some specific sum must be proved to have been embezzled, the same as in larceny some particular article must be shown to have been stolen. 2 Bishop's New Crim. Law, sec. 375; 2 Bishop's New Crim. Proc., sec. 337. (4) Instruction numbered 1 and numbered 3, given for the State are insufficient because they do not state that the jury should find that defendant was authorized to receive and to account for the money of Brown & Son. Instruction numbered 3 asked by the defendant should have been given to the jury. Sufficient testimony was elicited from witness Brown to show that he presented the hope of an indefinite favor to defendant at the post-office in Galena, and early in their conversation. Anything said after Brown told defendant that the law would be easier on him, is inadmissible. State v. Brockman, 46 Mo. 566; 1 Greenleaf on Evid., sec. 220; 1 Phillips on Evid., sec. 544; Bishop's Crim. Proc., secs. 1223 and 1233.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State.

(1) The indictment follows the language of the statute as near as may be. The offense is created by statute and in such cases it is sufficient to follow the language of the statute in charging the crime. State v. Adams, 108 Mo. 208; State v. Mohr, 68 Mo. 303; State v. Coulter, 46 Mo. 565; State v. Johnson, 93 Mo. 319; State v. Stebbens, 132 Mo. 332. It is not essential that the indictment should charge the character of business in which Brown & Son were engaged. Too much particularizing sometimes becomes objectionable and renders the indictment bad. All that was necessary in this case, as in all others, is to inform the accused of the "nature and cause" of

the offense he is called upon to answer.    This is stated suffi-
ciently clear when the allegation is set out that he was in the
employ of Brown & Son, and stating the name of the persons
composing the said firm of Brown & Son.    It has never been
considered necessary to charge the particular character of busi-
ness the prosecutor is engaged in when drawing an indictment
charging a person with burglary and larceny, and as it is not
essential in that class of cases, it can not, for the same reason,
be necessary here.    We are also called upon to answer the
charge that the indictment should have contained some state-
ment showing defendant was authorized to receive money while
in the employ of Brown & Son.    The statute does not so re-
quire.    It makes no difference whether he was or was not au-
thorized to receive money.    He was employed by Brown &
Son; was over the age of sixteen years; was a clerk in the
establishment of his employers and had the opportunity to han-
dle, take and embezzle money, goods and property.    It is not
that he shall be authorized to receive the money which makes
it essentially a crime to embezzle, but that being in such em-
ployment, he is clothed with an opportunity to take and em-
bezzle.    Besides, he is charged in the indictment with being in
the service of Brown & Son as a "clerk."    The indictment uses
the same word as the statute.    In both the statute and indict-
ment the common, ordinary and usual meaning of the word in
its generally accepted term must be considered, rather than any
technical use to which it may in certain cases and under certain
conditions be applied.    (2) The confession shown in evidence
is sufficient.    Defendant is shown to have stated that he took
the money and converted it to his own use.    State v. Brooks,
92 Mo. 542; State v. Walker, 98 Mo. 95; State v. Miller, 49
Mo. 505.    Defendant was accused of the embezzlement at the
time of the arrest and before he knew there was an officer pres-
ent to secure his arrest.    He at once admitted the crime and

Vol 160 mo—9

said he could not help it, that it was in him to steal.    It will
be noticed here that even though all these words of defendant
be stricken out as he seems to desire, it will nevertheless leave
him standing in perfect silence to the accusation made at the
time of his arrest.    It has been held by this court to be so
instinctively natural for one directly charged with some crime
to repel the charge with an immediate and direct denial that
the failure to do so is regarded as a tacit confession of guilt and
as competent evidence therefor.    State v. Walker, 78 Mo. 380;
State v. Talmage, 107 Mo. 543.    (3) Had the confession
been obtained by the flattery of hope or the torture of fear it
should have been excluded and error would have been com-
mitted by the introduction of statements so obtained.    Such
however, is not the case at bar.    The confession was voluntary.
State v. Meyers, 99 Mo. 107; State v. Patterson, 73 Mo. 695.
(4) Instructions one and three given for the State are objected
to because they fail to tell the jury that they should find.de-
fendant was authorized to receive and to account for the money
embezzled by him from Brown & Son.    This objection is fully
answered in point one hereof.    It is not necessary to make any
such allegation in the indictment, nor was it for the same rea-
son necessary to so instruct the jury.    If he was the clerk as
charged and obtained possession of the money and appropri-
ated it to his own use, he is guilty of embezzlement.

BURGESS, J.—Defendant was convicted at the October
term, 1899, of the circuit court of Barry county, and his pun-
ishment fixed at two years' imprisonment in the State peniten-
tiary under an indictment presented by the grand jury of said
county charging him with the crime of embezzlement.

After ineffectual motions for new trial and in arrest, de-
fendant appeals.

The indictment contained three counts, but the second and

third were taken from the jury, and defendant was convicted on the first count, which charges that "On the twenty-fourth day of December, 1898, at the county of Barry, State aforesaid, one George E. Lipscomb, being then and there the clerk of a certain co-partnership of persons, to-wit, L. G. Brown and A. L. Brown, under the name style of L. G. Brown & Son, and the said George E. Lipscomb being then and there not a person under the age of sixteen years, did then and there by virtue of his said employment as clerk of the said co-partnership, to-wit, of L. G. Brown & Son, have, receive and take into his possession and under his care certain money to a large amount, to-wit, to the amount of $75, of the value of $75, of the property and moneys then and there belonging to the said co-partnership, to-wit, to the said L. G. Brown & Son, and the said George E. Lipscomb the said money then and there feloniously did embezzle and fraudulently convert to his own use, without the assent of his said employers, to-wit, without the assent of the said L. G. Brown and A. L. Brown, the owners of said money, and the said George E. Lipscomb the said money in the manner and form aforesaid feloniously did steal, take and carry away, against the peace and dignity of the State."

Brown & Son had, for several years prior to the alleged crime, conducted a general mercantile business at Cassville, Missouri. Sometime in October, 1897, they employed Lipscomb as a clerk in their store. He remained in their employ until December 28, 1898. There seems to have been no complaint as to his services until after he had ceased to work for them. When Lipscomb resigned his position the firm was indebted to him in the sum of $114.60 for services, which was paid him.

The firm of Brown & Son, composed of L. G. Brown and A. L. Brown, kept no account of their cash sales or their inci-

dental expenses; each clerk, several in number, and themselves, had access to the cash drawer at any and all times.

After Lipscomb resigned his position as clerk, Brown & Son found that they were short several hundred dollars, though the exact amount could not be determined. Soon thereafter the defendant, who had been spending considerable money and had been found in possession of considerable more, was suspected of having been guilty of embezzlement while in their employ. He had left Cassville and gone to Galena, Kansas. On the ninth day of January, 1899, a warrant was sworn out for his arrest, and an officer went with A. L. Brown, a member of the firm of Brown & Son, to Galena to secure his arrest and return to Barry county. They found defendant at the post-office in Galena, and before defendant was notified of the intention of the officer to arrest him he admitted to Brown that he had embezzled the money. He had on his person a bank book of the Citizen's Bank of Galena, Kansas, showing a deposit of $440, on the seventh day of January, 1899. On being questioned about the deposit with the Galena Bank, he said he had checked none of it out, that "it is all there." In the same conversation defendant admitted he had embezzled the money, but tried to justify the act by saying he could not help it, that it was in him to steal, and he could not help it; that he was ready and willing to be punished for it, and would return to Missouri and go to the penitentiary.

The admission or confession of the appellant is practically the only evidence showing guilt. However, it was shown in evidence that defendant frequently spent sums of money on his own account, such as for livery hire, etc., but failed to charge himself with the amount, it having been taken from the cash drawer at the store.

Over the objection and exception of the defendant, the court at the instance of the state instructed the jury as follows:

State v. Lipscomb.

"1.   The court instructs the jury that if they shall believe and find from the evidence that the defendant George E. Lipscomb, at any time within three years next before the eighth day of April, 1899, at the county of Barry and State of Missouri, was a clerk in the employment of the co-partnership firm of L. G. Brown & Son, and that defendant at the time of his employment as such clerk was not a person under the age of sixteen years, and that during such employment as such clerk of the said L. G. Brown & Son, and within three years next before the eighth day of April, 1899, defendant, while acting in the capacity of such clerk and by virtue of his employment as aforesaid, did take or receive into his possession or care, the money of the said L. G. Brown & Son of the amount of seventy-five dollars, as alleged in the indictment, or any portion thereof, to the amount of thirty dollars or more, and that after taking and receiving said money, the defendant did, at the county of Barry and State of Missouri, and within three years next before the eighth day of April, 1899, feloniously, unlawfully and intentionally embezzle and fraudulently convert said money or any portion thereof of the amount of thirty dollars or more to his own use, without the assent of the said L. G. Brown & Son, and that the said money so embezzled and converted by the defendant then and there belonged to and was the property of the said L. G. Brown & Son, then the jury should find the defendant guilty of embezzlement, as charged in the first count of the indictment; and assess his punishment at imprisonment in the penitentiary for a term not less than two nor more than five years.

"2.   The court instructs the jury that it is not necessary in this case, in order to authorize the jury to find the defendant guilty of the embezzlement of thirty dollars or more, for the State to prove that the amount of thirty dollars was taken at the same time or on the same day.   Therefore, if the jury be-

lieve from the evidence that the defendant formed a design to embezzle and convert money of the said L. G. Brown & Son, and that in pursuance of such formed design, he did, within three years next before the eighth day of April, 1899, embezzle the money of the said L. G. Brown & Son, to the amount of and of the value of thirty dollars or more, then that is sufficient.

"3.   The court instructs the jury if they shall believe from the evidence that defendant is guilty of embezzlement as defined in instruction number 1, and if the jury believe from the evidence that the money so converted was of a less amount than thirty dollars, and that the same was taken, received and embezzled by defendant as defined in these instructions, within one year next before the eighth day of April, 1899, then the jury will find the defendant guilty as charged in the first count of the indictment, and assess his punishment at imprisonment in the county jail for a period not exceeding one year, or by fine not exceeding one hundred dollars, or by both such fine and imprisonment.

"4.   The court instructs the jury that the defendant is presumed innocent of the crime charged; that before they can convict him, the State must overcome that presumption by proving him guilty beyond a reasonable doubt.   If the jury have a reasonable doubt of the defendant's guilt, they must acquit him; but a doubt to authorize an acquittal should be a substantial doubt arising from the evidence and not a mere possibility of his innocence.

"5.   The court instructs the jury that if they believe from the evidence that the defendant made any statements in relation to the crime charged, the jury must consider such statements all together.   The defendant is entitled to the benefit of what he said for himself if true, and the State is entitled to the benefit of anything he said against himself in any statement proven by the State.   What the defendant said against

State v. Lipscomb.

himself the law presumes to be true because said against himself. What the defendant said for himself the jury are not bound to believe because it was said in statements proved by the State; but the jury may believe or disbelieve it as it is shown to be true or false, by the evidence in the case. It is for the jury to consider under all the facts and circumstances how much of the whole statements the jury deem worthy of belief.

"6. The court instructs the jury if they believe from the evidence that the defendant made any declarations or confessions relative to the alleged crime charged, such declarations or confessions should be received by the jury with great caution, taking into consideration the liability of witnesses to forget or misunderstand what was really said; to misquote the language used; the failure of the defendant to have expressed his own meaning, or of the witness to comprehend the meaning intended to be conveyed and the infirmity of human memory.

"7. The jury are the sole judges of the credibility of the witnesses and the weight to be given to their testimony. In determining such credibility and weight they will take into consideration the character of the witness, his manner on the stand, his interest, if any, in the result of the trial, his relations to or feelings toward the defendant or L. G. Brown or A. L. Brown, the probability or improbability of his statements as well as all the facts and circumstances in evidence. In this connection if the jury believe from the evidence, that any witness has wilfully sworn falsely as to any material fact in the case, the jury may reject all or any part of such witness's testimony.

"8. The court instructs the jury that under the indictment and the evidence adduced by the State, they should find the defendant not guilty as to the second and third counts of the indictment.

"9.   Evidence is of two kinds, direct and circumstantial; direct testimony is where the witness testifies directly of his own knowledge of the main fact or facts to be proven.   Circumstantial evidence is proof of certain facts and circumstances in a given case from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind.   Crime may be proved by circumstantial evidence as well as by direct testimony of eye-witnesses, but the facts and circumstances in evidence should be consistent with each other and with the guilt of the defendant and inconsistent with any reasonable theory of the defendant's innocence."

The court on the part of the defendant gave the jury the following instructions:

"1.   The jury are instructed that they will not in any manner whatever, in making up their verdict, consider the testimony of witness Billett as to any moneys he may have seen in the possession of the defendant at Monett.

"2.   The jury are instructed that they will not consider, in any manner whatever in arriving at a verdict in this case, the testimony of J. W. Johnson in regard to the money the defendant should have handed to Sturman Hailey on the twenty-fourth day of December, 1898."

These were all the instructions that were given in the case.

The defendant requested, and the court refused to give the jury the following instructions, to-wit:

"3.   The court instructs the jury that they will not consider, in arriving at a verdict in this case, any statements or alleged confessions of the defendant, as related by the witnesses Brown and Tomlinson after the said Brown had advised the defendant that the law would be easier on him if he would confess or tell the truth about it.   The jury are further in-

structed that said statements were not made voluntarily and should not be considered by you in arriving at a verdict in this case.

"4.   The court instructs the jury that before you can find the defendant guilty of embezzling money of L. G. Brown & Son, you must find that the defendant embezzled and fraudulently converted said money, or some portion thereof, as defined in these instructions outside of and independent of any and all alleged confessions, as may have been testified to by witnesses in the case, and unless you believe and find from the evidence that the State has so shown and proven to your satisfaction, then your verdict should be for the defendant."

To which action of the court in refusing to give the jury said instructions numbered 3 and 4, asked by the defendant, the defendant then and there at the time excepted and still excepts.

It is insisted by defendant that the indictment is bad for the reason that it does not state, "the nature and cause of the accusation," and because it does not state the business in which Brown & Son were engaged, and for the further reason that it does not charge that the defendant was authorized to receive money.

The indictment was drawn under section 1912, Revised Statutes 1899, that reads as follows:

"If any agent, clerk, apprentice, servant or collector of any private person, or of any co-partnership, except persons so employed under the age of sixteen years, or if any officer, agent, clerk, servant or collector of any incorporated company, or any person employed in any such capacity, shall embezzle or convert to his own use, or shall take, make away with or secrete, with intent to embezzle or convert to his own use, without the assent of his master or employer, any money, goods, rights in action, or valuable security or effects whatso-

ever, belonging to any other person, which shall have come into his possession or under his care by virtue of such employment or office, he shall, upon conviction, be punished in the manner prescribed by law for stealing property of the kind or the value of the articles so embezzled, taken or secreted."

That the indictment does state the nature and cause of the offense is, we think, clear. It was not necessary for it to set out the particular kind of business in which the co-partnership of Brown & Son were engaged. It does allege that Brown & Son were co-partners, and as such defendant was in their service as clerk, and received and embezzled certain moneys. In charging the offense it follows substantially the language of the statute, by which the offense is created, and that is all that was necessary. [State v. Adams, 108 Mo. 208; State v. Mohr, 68 Mo. 303; State v. Coulter, 46 Mo. 565; State v. Johnson, 93 Mo. 317.]

Nor do we think there is any merit in the contention that the indictment should have alleged that defendant was authorized to receive the money which he is charged with embezzling, for by the express language of the statute it is made a felony for any "clerk" to embezzle or convert to his own use any money, or to take, make way with or secrete with intent to embezzle or convert to his own use without the assent of his master or employer any money which shall come into his possession or under his care by virtue of such employment, and this being the case, whether he was authorized to receive the money or not, if he received it as clerk for his employers, and embezzled or converted it to his own use, he is guilty of a criminal offense under the statute.

Defendant claims that the admissions or confession of defendant were inadmissible in evidence because the whole of the conversation was not given. But it does not appear from the record that any part of the conversation was excluded by

State v. Lipscomb.

the court, therefore defendant is in no position to complain upon that score.   In respect to these admissions, A. L. Brown testified that defendant stated to him at the post-office in Galena, Kansas:  "Brown, I know I have robbed you, I can't help it, it is in me.  It is in me, and I can't help it.   You can put me behind the bars ten years and when I come out I guess I would do the same thing again.   It is just in me."   That Brown then asked him what he got, and he said:  "By God you won't scare me into telling you that."

These admissions were made before defendant's arrest, without any promise of immunity from prosecution or flattery of hope, but were entirely voluntary, and were clearly admissible in evidence.

Defendant did not even take the witness stand as he had the right to do, and deny that he made these statements, or, if made, that it was under some promise of immunity or flattery of hope, nor was there any evidence from any other source tending to show that such was the case; there is, therefore, not the slightest circumstance upon which to base defendant's contention upon this question.

Defendant's assertion that the *corpus delicti* was not proven is untenable, for, taken altogether, the evidence established this matter, as well, also, as defendant's guilt beyond the peradventure of a doubt.

Instructions one and three, given in behalf of the State, are challenged upon the ground that they fail to tell the jury that they should find that defendant was authorized to receive and account for the money embezzled by him from Brown & Son.   This same objection was raised with respect to the indictment which we have ruled was not necessary, and, if not necessary to allege in the indictment, it must logically follow that it was not necessary to so instruct the jury.

A further insistence is that the court erred in refusing

instruction numbered three asked by defendant. This contention is predicated on the fact that after the statements of defendant, before set out, which were made at the post-office in Galena, Kansas, but while yet in the post-office, L. G. Brown said to defendant in the presence of G. L. Tomlinson, a police officer and deputy constable of Galena, and who had a warrant for the arrest of defendant, that "it would be best to tell the truth about it."

About this time Tomlinson arrested defendant and took him back to Cassville in this State, and while in the custody of Tomlinson, and after he was turned over by him to the proper authorities in this State, and was confined in jail at Cassville, he voluntarily made various incriminating statements and admissions as to his guilt at which this instruction is leveled.

In State v. Patterson, 73 Mo. 695, it appeared that the prisoner was searched in the mayor's office at Sedalia and told that he had "better tell the straight truth." The sheriff was not present. It was contended by defendant that his confession made under these circumstances should have been excluded.

SHERWOOD, C. J., speaking for the court said: "But even if he was, it is difficult to see how these words from one not in authority, could be regarded by the accused in the light of either a promise of benefit or a threat of injury. And a mere adjuration to speak the truth does not vitiate the confession, no threats or promises being employed." The use of the words "it would be best to tell the truth about it," can not by any fair means be construed as a threat or the flattery of hope. Moreover, it is settled that a confession of crime, to be inadmissible, must be made to an officer of the law, in consequence of improper influence exerted by him. [State v. Patterson, supra; State v. Phelps, 74 Mo. 128; State v. Hedgepeth, 125 Mo. 22; State v. McClain, 137 Mo. 316.] There was therefore no error in refusing the instruction.

Riesterer v. Land & Lumber Co.

We have thus passed upon all the points presented by defendant in his brief which we think meritorious, and finding no reversible error in the record, affirm the judgment.

*Sherwood, P. J.,* and *Gantt, J.,* concur.