THE STATE v. ADAMS, Appellant.

Division Two, February 1, 1904.

Criminal Law: ABDUCTION OF FEMALE: CONCUBINAGE: INTENT: AGREEMENT AFTER TAKING. Concubinage is the cohabiting of a man and woman who are not legally married. The gravamen of the offense of taking away a female from the person having legal charge of her for the purpose of concubinage, is the intent. with which she is taken, to be gathered from all the facts and circumstances in evidence. And when the taking is shown to be for the purpose of concubinage, the offense is complete, and nothing that may be said or done thereafter, nor any agreement thereafter entered into to live as man and wife, constitutes a defense.

Appeal from Cass Circuit Court.—*Hon. Wm. L. Jarrott*, Judge.

AFFIRMED.

*W. D. Summers, C. H. Ennis* and *A. A. Whitsitt* for appellant.

The gravamen of the offense is the purpose or intent with which the female is taken away from her parent. Therefore before the defendant could be convicted under the information, his intention when leaving Cass county must have been to make Della Oram his concubine. State v. Rorebeck, 158 Mo. 130; State

v. Round, 82 Mo. 679; State v. Gibson, 111 Mo. 92; State v. Johnson, 115 Mo. 410; State v. Wilkerson, 121 Mo. 485; State v. Bapst, 131 Mo. 328; State v. Richardson, 117 Mo. 586; Bishop on Stat. Crimes (1 Ed.), 420, sec. 641; State v. Gibson, 108 Mo. 575.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

BURGESS, J.—Defendant was convicted in the circuit court of Cass county and his punishment fixed at two years' imprisonment in the penitentiary, under an information filed by the prosecuting attorney of said county charging him with having, at said county, on the 8th day of May, 1903, taken away from her father one Della May Oram, a female under the age of eighteen years, to wit, of the age of fifteen years, for the purpose of concubinage, by having illicit intercourse with her.

After unsuccessful motions for new trial and in arrest, defendant brings the case to this court by appeal for review.

The facts briefly stated are about as follows:

On February 8, 1902, defendant formed the acquaintance of Della May Oram, who was then about fourteen years of age. Shortly thereafter he went to the home of her father to work, and continued to work there until the following May. During this time the defendant and Della May became engaged to be married in May, though she testified that she never intended to marry him, and that the engagement was broken off in March; was never thereafter renewed. It was proven that defendant admitted that while living at the home of the father of Della May Oram, he had connection with her, but said he was not to blame, as she came to his bed. Defendant denied, however, making such statement, or that it was true in fact. He bought her an engagement ring, but she refused to exhibit it on her

finger at any time, declaring always that she did not recognize it as an engagement ring, as she did not intend to marry him.   This agreement was never communicated to the girl's parents, Della May informing defendant that her parents were opposed to his paying attention to her.

On the 8th day of May, 1903, defendant, as shown by the girl's testimony, promised, and she accepted the promise, to give her two hundred dollars if she would leave with him.   This money was never paid.   According to the plans previously made between them, defendant secured a livery team and vehicle at Harrisonville, some miles from where the prosecutrix's father lived, and proceeded to the Oram home, arriving there about eleven o'clock in the evening.   The girl met him at the barn with her clothing, according to the understanding previously formed.   The girl's father and mother knew nothing of her intention or of her leaving home until after she had gone.   She drove with him to Pleasant Hill where they took the train for Kansas City, arriving there about six o'clock the next morning.   They went to a rooming house where they remained until the next morning, when she went across the State line to Sheffield, Kansas, so that she might visit some friends, former neighbors of her family in Cass county, Missouri.   Defendant went with her to Sheffield, but returned immediately to Kansas City.   He visited her but once while she was in Kansas, though she remained there about three days.   She left the home of her friends in Kansas and returned with defendant to Kansas. City.   They engaged a room in some rooming house and remained there one night, then going to a rooming house on Mulberry street, where the defendant had arranged for a room, and where he introduced the girl to the landlady as his wife.   In this room they cooked their meals and slept until the following Tuesday, when defendant was arrested by a police officer upon a telegram from the sheriff of Cass county.

While they were at the Mulberry street house the defendant had intercourse with the prosecutrix several times.

When he took her to this house he stated to the housekeeper that she was his wife. Before he had intercourse with her they had arranged to be married the day following defendant's arrest.

The defense was a common law marriage.

Over the objection and exceptions of defendant the court instructed the jury as follows:

"1.   The jury are instructed that if you find from the evidence that at the county of Cass and State of Missouri, at any time within three years next before the filing of the information herein, the defendant did take away Della May Oram from her father, Henry Oram, for the purpose of concubinage, and that said Della May Oram was a female under the age of eighteen years, you will find him guilty and assess his punishment at imprisonment in the penitentiary not less than two years nor more than five years.

"Even should you believe from the evidence that the said Della May Oram was of easy virtue, or had previously had sexual intercourse with defendant, or had consented to go away with defendant, or that she consented to have sexual intercourse with the defendant, yet none or all of these facts would constitute any defense to this prosecution.

"2.   The jury are instructed that by the word concubinage, as used in the information and instructions, is meant the act or practice of a man cohabiting in sexual intercourse with a woman to whom he is not married. If the jury believe from the evidence that the defendant, Joseph J. Adams, did take the witness, Della May Oram, away from her father, and that said Della May Oram was at the time a female under the age of eighteen years, for the purpose of cohabiting with her as a man and woman in sexual intercourse, for any length of time,

but for more than a single act of sexual intercourse, without the authority of a marriage, it would be sufficient to constitute the offense charged in the information.

"3.   The law presumes the innocence of the defendant, and this presumption continues with him until it has been overcome by evidence which establishes his guilt to your satisfaction and beyond a reasonable doubt, and the burden of proving his guilt rests with the State. If, however, this presumption has been overcome by the evidence and the guilt of the defendant established to a moral certainty and beyond a reasonable doubt, your duty is to convict.   If you have a reasonable doubt of the defendant's guilt, you should acquit; but a doubt to authorize an acquittal on that ground ought to be a substantial doubt touching the defendant's guilt, and not a mere possibility of his innocence.

"4.   The court instructs the jury that in considering the weight of the evidence given by the defendant, they may take into consideration the fact that he is the defendant, and you may consider his interest in this case in passing on the credibility and weight to be given his testimony.

"5.   The court instructs the jury that marriage is the civil status of one man and one woman, capable of contracting united by contract and mutual consent for life, for the discharge to each other and to the community of the duties legally incumbent on those whose association is founded on the distinction of sex.

"If the jury believe that the parties J. J. Adams and Della May Oram, did not intend to enter into the agreement of matrimony, but simply agreed to abide together for the purpose of illicit sexual intercourse, then there was no marriage between them."

Thereupon the defendant asked the court to instruct the jury by giving instructions A and B, as follows:

"A.   A reasonable doubt is that state of mind which, after a full comparison and consideration of all

the evidence, both for the State and defense, leaves the mind of the jury in that condition that they can not say that they feel an abiding faith amounting to a moral certainty from the evidence in the case, that the defendant is guilty of the charge as laid in the information. If you have such a doubt, if your conviction of defendant's guilt, as laid in the information, does not amount to a moral certainty from the evidence in the case, then the court instructs you that you must acquit the defendant.

"B.    The court instructs the jury that in law marriage is a civil contract, and that it is not necessary to its validity that it should be solemnized by a minister of the gospel or a judge of the court of record or by any one else authorized by law to solemnize marriage or to procure a marriage license to marry; you are instructed that if you find from the evidence that the defendant and Della May Oram agreed to live together as husband and wife, as instruction No. — defined, you will acquit the defendant."

The court refused to give instructions A and B, as asked by the defendant. To which refusal the defendant at the time excepted, and does now except.

Thereupon the court gave, at the instance of the defendant, the following instructions:

"1.    The jury are instructed that although you may believe from the evidence that the defendant, J. J. Adams, did take Della May Oram from her father, yet, if you further believe from the evidence that Adams' object and purpose in taking said Della May Oram was to marry her, and not for the purpose of concubinage, as in other instructions defined, you will find the defendant not guilty; and this is true even though the jury should further believe that after taking the girl as above stated, if he did so take her, he had sexual intercourse with her at the house on Mulberry street referred to in the evidence.

"2.    The court instructs the jury that under the

law it is not necessary that a marriage ceremony be performed or that a license be obtained in order to constitute marriage, but that any agreement between the parties entered into, and declared in the presence of one or more persons, and a living together as husband and wife in pursuance thereto, would constitute a legal marriage, and in this case if the defendant and Della May Oram were together in May, 1903, and in accordance to and with an agreement and understanding that they should get married at said date, and that they went together in pursuance and with the understanding that such marriage was to be entered into by them, and they contracted and agreed between themselves to become husband and wife, and in fulfillment thereof announced that fact and said marriage to one another, and did live together as husband and wife from about the 16th day of May until about the 20th day of May, 1903, on Mulberry street at the rooming house of Mrs. Smith, and that such living together and intentions were in good faith, meaning thereby to declare themselves husband and wife, then such taking was not unlawful nor feloniously and the jury will find the defendant not guilty.

"3.    The court instructs the jury that this is not a civil case but a criminal prosecution, and that the rules as to the amount of evidence in this case, and a mere preponderance of the evidence, will not warrant the jury in finding defendant guilty; but before the jury can convict the defendant they must be satisfied of his guilt beyond a reasonable doubt, and unless so satisfied, the jury should find the defendant not guilty.

"4.    The court instructs the jury that in this case to justify a conviction of the defendant, the burden is on the prosecution to prove, by credible evidence, to the satisfaction of the jury, beyond a reasonable doubt, that such defendant is guilty, as charged in the information; that he, the said defendant, at the county of Cass and State of Missouri, on or about the 7th day of May, 1903, did, one Della May Oram, a female under the age of

eighteen years, to-wit, fifteen years, take from one
Henry Oram, her father, the said Henry Oram then and·
there having the legal charge of the person of the said
Della May Oram, and that said taking was for the pur-
pose of concubinage.

"5. In determining the credibility of any witness
and the weight to be given to his or her testimony, you
may consider his or her manner on the witness stand,
his or her interest, if any, in the result of the trial, his:
or her relation to or feelings for or against the defend-
ant, the probability or improbability of his or her state-
ments as well as the facts and circumstances in evidence.
In this connection you are further instructed that if you
shall believe that any witness has willfully and know-
ingly sworn falsely to any material fact in the case,
you are at liberty to reject the whole or any portion of
such witness's testimony.''

The statute under which the information was drawn
(Sec. 1842, R. S. 1899) provides that any "person who
shall take away any female under the age of eighteen
years from her father, mother, guardian or other per-
son having the legal charge of her person, either for the
purpose of prostitution or concubinage . . . shall,
upon conviction thereof, be punished by imprisonment
in the penitentiary not exceeding five years.''

The statute is leveled at both "prostitution," and
"concubinage,'' which are entirely separate and distinct
offenses, and can not be joined in one count.

In State v. Gibson, 111 Mo. l. c. 97, SHERWOOD, C. J.,
in speaking for the court, said:

"Thus contrasted it is easy to see that the two
words, concubinage and prostitution, have and were in-
tended to have a widely different meaning.  To hold
otherwise would be to say that the two words mean the
same thing, and that, therefore, the Legislature in fram-
ing the section under discussion employed a useless and
meaningless word, which is a supposition not to be in-
dulged, as abundant authorities show.  The section in

question levels its denunciation against two separate and distinct offenses, offenses which, therefore, can not be joined in one count, but, if charged, according to a familiar rule, must be charged in separate counts.''

The prosecution is for concubinage which is defined by Mr. Webster to be ''the cohabiting of a man and a woman who are not legally married; the state of being a concubine.'' ''A woman who cohabits with a man without being married.''

It is defined by law dictionaries as ''a species of loose informal marriage which took place among the ancients, and which is yet in use in some countries.'' [Black's Law Dictionary; Wharton's Law Dictionary; Bouvier's Law Dictionary.]

The gravamen of the offense is the purpose or intent with which the female is taken away from her parents or guardian, or person having legal charge of her, to be gathered from all the facts and circumstances connected with the taking, and while the defendant testified that his purpose and intent in taking the girl away from the custody of her father was to marry her and make her his wife, his story does not very well comport with the fact that he never asked the consent of her father; that he had agreed to give her two hundred dollars to run off with him; that he took her to a rooming house in Kansas City upon their arrival there on Friday morning; remained there occupying the same room until about twelve o'clock on the following Sunday, when they went to the house of a friend of the girl's at Sheffield, Kansas, where she remained until Monday, when she visited another friend of hers accompanied by defendant, arriving there at about 12 o'clock on Monday; remained there until the following Friday evening at about seven o'clock, when the defendant called for her, saying he was going to take her back to Sheffield, but instead of doing so took her to a rooming house in charge of a woman whom she did not know, where they stayed all night, when they again occupied the same room,

State v. Adams.

which had but one bed in it; then went from there to another rooming house on Mulberry street in charge of a Mrs. Smith, when for the first time he introduced her under the name of Adams, telling Mrs. Smith she was his wife. They remained there from Saturday about three o'clock, until Wednesday morning, remaining there four nights and until they were arrested, occupying the same room and bed and copulating together as man and wife, during all of which time defendant, in so far as disclosed by the record, made no effort or attempt to get a license to marry the girl and to make her his wife, but, as an excuse therefor, testified that when he would propose to her to get license and be married, she would put it off, and insist upon waiting a while. If defendant's intent in taking the girl away from her father was for the purpose of concubinage as herein defined, as the evidence tended to show, then whatever he may have said thereafter with respect to marrying her, or any agreement that he may have entered into with her to live together as man and wife, is no defense to this action. The intent of the defendant could only be arrived at by the facts and circumstances in evidence, in respect to which they were somewhat at variance.

It is also true that the prosecuting witness's testimony was not strictly in accord with her testimony given in her deposition taken in this case prior to the time of the trial, but the weight of the testimony, and the credibility of the witnesses were for the consideration of the jury.

The instructions covered every phase of the case, and were very fair to the defendant.

Finding no reversible error in the record, we affirm the judgment.

All concur.