**STATE of Missouri, Plaintiff-Respondent,**

v.

**Hollis BUTLER, Defendant-Appellant.**

No. 7623.

Springfield Court of Appeals.

Missouri.

Jan. 8, 1958.

Bradley & Noble, John H. Bradley, Kennett, for defendant-appellant.

Leon McAnally, Kennett, for plaintiff-respondent.

RUARK, Judge.

Defendant was convicted of stealing a two-bottom tractor breaking plow from the farm of one Hoyt McDaniel. The defendant (age twenty-two) and his brother Belvey owned, or at least occupied, a sixty-acre farm near what is called the Rives neighborhood. .Late in the afternoon of a cold December day defendant got in a truck which belonged to his brother Belvey and went to Rives, where he was eventually joined by another young man named Martin. The two rode around awhile, then drove to the house of a youth, one Stinson, and picked him up. From there the trio went to the home of another young man named Sanford, who went along, thus making it a foursome. By that time it was after dark. Just when John Barleycorn joined the party is not clear, but he was riding with it at the time the plow was taken, and it appears that at least three of the four (including defendant, Butler) were drinking. McDaniel's plow lay beside a small shop some little distance from the road and somewhat removed from a tenant house on the place. The party, with defendant driving, drove up approximately opposite the shop, and Martin, Stinson, and Sanford disembarked. Defendant drove his truck up the road, turned around someplace, and returned in about ten minutes. In the meantime the three venturers had got the plow partly out to the road. To use the words of one of them, "We tried to tote the plow. We toted it as far as we could and couldn't tote it any further and we waited until Hollis [the defendant] come back and he helped us tote it." Hollis did come back and the four of them toted the plow the rest of the way to the truck and loaded it. From there they, with defendant at the wheel, drove the several miles back to the farm occupied by Belvey and Hollis Butler and there put the plow out.

Appellant's first stated assignment is the refusal of the court to permit defendant to make proof of defendant's hard rais'n'. Specifically the offer of proof was that defendant's father and mother separated before defendant was born; that defendant went to his father when he was four years old "and they batched in the neighborhood with two older brothers un-

til the death of his father some year or so ago." To this assignment defendant cites no authority, and in his argument he admits he has none. He states that he included it in the brief only for the purpose of predicting what the law "in the course of evolution" eventually will be, rather than saying what it is. Obviously the matters offered had nothing to do with the issues involved in the trial, and we do not feel called upon to cite authority, because we do not consider the assignment to be contention of a point upon which appellant urges or expects a ruling; nor can we here debate the merits of the English-American common-law system as opposed to the continental or Japanese criminal procedure.

In proceeding to appellant's real assignments, we first suggest that practically all of them are rendered ineffectual by the fact that defendant, on the stand, admitted that he helped steal the plow. He testified that, after the group had got together, it was suggested that they get the plow, and

"Q. Did you all then agree to get the plow or you agreed, or what? A. They all wanted to get it and I was with the bunch. They asked me to drive down and they would get it.

"Q. Did you drive your truck down there then? A. Yes, sir. They got out and they was supposed to have the plow back out there and put it in the truck when I come back. * * *"

The defendant then testified as to driving away and returning, helping tote the plow to the truck, and taking the plow to the place occupied by him and his brother Belvey, where he said, "We just kicked it out in the pasture." The defendant said he was "pretty drunk" on this occasion; however, it appears from his testimony that he was not so drunk that he could not remember what was said and done; nor was he too drunk to help load the plow and then drive the truck several miles to the place where they kicked the plow out in the pasture. There was no contention that the plow was bailed, borrowed, or taken by mistake, and since the defendant admitted on the stand that he helped steal the plow it would seem that errors in regard to admission of evidence, or in the giving of instructions, which affected the question of whether or not the act was done (as distinguished from justification, avoidance, or mitigation), would be harmless. State v. Owen, 78 Mo. 367; State v. McWilliams, 267 Mo. 437, 184 S.W. 96, 101; State v. Mitchell, 229 Mo. 683, 129 S.W. 917, 921; State v. James, 194 Mo. 268, 92 S.W. 679; State v. Dill, Mo., 282 S.W.2d 456(16); State v. Bray, Mo.App., 278 S.W.2d 49. Nevertheless, we will consider appellant's assignments separately.

One assignment is in regard to questions and statements as follows:

(a) The owner of the plow testified (in reference to dates):

"A. I didn't know exactly when it was stolen."

"Judge Bradley: We object to the statement that it was stolen.

"The Court: Sustained."

The witness had had his plow stolen. Defendant was being tried for stealing it. Later in the trial he admitted stealing it. It seems to us that the court leaned over backward to be considerate of defendant's feelings in refusing to let the witness use the word "stolen."

(b) The witness Martin testified that when the young men went to collect Sanford, the last member of the foursome, defendant and Stinson got out of the truck and told Sanford's wife they were going hunting. Martin remained sitting in the truck. Later it developed that the witness did not personally hear the "going hunting" statement made.

"Judge Bradley: We ask that the jury be instructed to disregard that. He wasn't present.

"The Court: That portion of the testimony as to what was said between Sanford and his wife is stricken from the record and the jury is instructed to disregard it."

Whether the defendant and his companion did, or did not, tell Sanford's wife that they were going hunting, instead of plow-stealing, could not have been prejudicial to the defendant under the record in this case.

(c) Witness Martin, in testifying as to what was done with the plow, said, "We took them to a little house on Belvey's place and dumped them out."

"Q. Was it Belvey's place or Hollis's place? A. Belvey's and Hollis's too.

"Q. You took it on Belvey's and Hollis's place? A. Yes, sir.

"Judge Bradley: I object to that as leading.

"The Court: Sustained."

The question could hardly be called leading. It repeated what the witness had just said and was consequently repetitious. But the reference was to the place where defendant himself said they took the plow.

■ (d) Defendant put on character witness Hockaday. On cross-examination the witness was asked what his business was, and he stated, "I run a pool hall."

"Q. And beer joint? A. Yes.

"Q. Was Hollis Butler one of your customers there? A. Yes, that is right.

"Judge Bradley: I object and move that be stricken.

"The Court: It may be stricken.

"Mr. McAnally: I think I have a right to show interest.

"The Court: Proceed. See what we get into."

We think the inquiry of the prosecuting attorney was competent, not only to show interest but as bearing on the extent of the witness' knowledge. The defendant had placed the witness on the stand to prove reputation. To that extent he vouched for the witness as being qualified to judge reputation.

■ (e) A character witness for defendant was asked on cross-examination:

"Q. Had you heard about him [defendant] stealing two tires and wheels from Watkins's car? A. I hadn't heard that.

"Judge Bradley: We object to *anything he hasn't been convicted of.* We ask that that be stricken.

"The Court: Sustained and stricken."

To shed further light on this inquiry: The defendant called several character witnesses who gave him a good reputation "before these troubles come up." One of defendant's character witnesses was more explicit.

"Q. You say before these troubles. What do you mean when you say 'these troubles'? A. What he got into here in the last couple of years, I would say.

"Q. For the past two years how has his reputation been? A. I guess it is pretty bad. They were arresting him all the time. Of course he hasn't been convicted.

"Q. How do you know he hasn't been convicted? A. I see he is still out.

"Q. Do you know whether or not he is out on bond now? A. I know he is out on bond now."

We are of the opinion that the inquiry was competent to test the witness' knowledge and the value of his testimony. State v. Carson, Mo.App., 239 S.W.2d 532, 535–536;

State v. Mitchell, 339 Mo. 228, 96 S.W.2d 341, and cases cited; Rogers v. St. Avit, Mo.App., 60 S.W.2d 698, 700. And obviously the extent of the knowledge of the witness who swears to a good reputation is not to be restricted to an inquiry as to *convictions*. Reputation can be made or lost by conduct irrespective of whether such conduct does or does not result in conviction. See State v. Casteel, Mo., 64 S.W.2d 286, 288; State v. Carroll, Mo., 188 S.W.2d 22, 23–24; State v. Gurnee, 309 Mo. 6, 274 S.W. 58, 60.

■ As to all the foregoing complaints it will be noted that in each instance the objection of the defendant was sustained, and when he moved for the answer to be stricken, or that the jury be instructed to disregard, the motion was sustained. He did not ask for reprimand or discharge of the jury. He got all he asked for and was apparently satisfied with it at the time. This is usually sufficient answer to claim of error. State v. Marlin, Mo., 177 S.W. 2d 485; State v. Armstead, Mo., 283 S.W. 2d 577, 583(13).

■ But defendant points to the line of cases which hold that a prosecuting attorney is a quasi-judicial officer and it is incumbent upon him to act in good faith. Therefore, if he persists in re-asking an improper question which because of its very nature casts prejudice against the defendant, or if he asks such a question which he knows or ought to know is improper and the mere asking leaves an impression with the jury, to become like the damned spot on the hands of Lady Macbeth so that no ruling may remove it, and the prejudice finds its way into the verdict no matter how regular the proceedings have been, then the error is irredeemable except by a new trial. State v. Spencer, Mo., 307 S.W.2d 440; State v. Burns, 286 Mo. 665, 228 S.W. 766; State v. Tiedt, 357 Mo. 115, 206 S.W.2d 524. The questions here were not those by which "the

astute lawyer for the state had sunk his fangs deep in the life blood of the defendant—too deep for the poison to be withdrawn." [1] The only question which could have carried any sting was that asked of the character witness in reference to stealing of tires, and this, as we have stated above, was proper, at least in the absence of showing of bad faith on the part of the prosecuting attorney.

■ Appellant complains of the giving of Instruction 3, which is the stock instruction on presumption of innocence and reasonable doubt, with the addition of the words "to your satisfaction." Thus, " * * * and this presumption continues until it has been overcome by evidence which establishes guilt *to your satisfaction* and beyond a reasonable doubt." It is contended that a jury might construe the italicized words as permitting proof of less quality than that necessary to convince beyond a reasonable doubt. An eminent and learned jurist who for a long time lent grace and dignity to our judicial system, when speaking for this court in Krause v. Spurgeon, Mo.App., 256 S.W. 1072, at loc. cit. 1074, held that such identical words in an instruction called for an *added* burden of proof. "There is no room or justification for this extra requirement, and, under the close case here, we cannot say it was not prejudicial." Again speaking for the Supreme Court in Seago v. New York Cent. R. Co., 349 Mo. 1249, 164 S.W.2d 336, at loc. cit. 340, 147 A.L.R. 372, this same erudite jurist discussed the same phrase again and cited authorities to show that it *added too much* to a burden of proof instruction. These were civil cases, but in criminal cases instructions having the same or similar expressions have been held to be "very fair to the defendant." See State v. Adams, 179 Mo. 334, 78 S.W. 588; State v. Copeman, 186 Mo. 108, 84 S.W. 942; State v. Thomas, 296 Mo. 459, 247 S.W. 116. We hold the instruction was not error against the defendant.

1. State v. Webb, 254 Mo. 414, 162 S.W. 622, 628.

■ Appellant challenges Instruction No. 5, which concerns the testimony of accomplices. This challenge is on the ground that the *sufficiency* of the evidence is left to the jury, and that the instruction is difficult and too involved to be understood by a jury. This is the identical instruction which was approved by the Supreme Court in State v. Sassaman, 214 Mo. 695, 114 S.W. 590, 601. The Sassaman ruling was approved in State v. Craft, 299 Mo. 332, 253 S.W. 224, 228. In State v. Harkins, 100 Mo. 666, 13 S.W. 830, 831, it was said that instructions in practically the same language placed the law very fairly before the jury. See also State v. Pope, 338 Mo. 919, 92 S.W.2d 904. It is true that if we were rewriting the instruction we might rearrange the order of its language, but we believe it not to be sufficiently awkward to render it improper, and in view of its approval by the Supreme Court we hold against appellant on this point.

The final complaint is against the credibility instruction, which is the stock instruction familiar to all trial lawyers. It is in practically the same wording as those given in State v. Lipscomb, 160 Mo. 125, 60 S.W. 1081, 1083, and Malone v. Franke, Mo., 274 S.W. 369, 373. The complaint is that there is no evidence to justify the reference to character, interest, or relation to or feeling toward the defendant or the prosecuting witness.

■ The credibility instruction with the "falsus in uno, falsus in omnibus" clause attached, though often used in this state, is received more often with tolerance than with favor.[2] The giving of such instruction is largely within the discretion of the court. State v. Swisher, 364 Mo. 157, 260 S.W.2d 6; State v. Lord, Mo., 286 S.W. 2d 737; State v. Hart, 331 Mo. 650, 56 S.W.2d 592; State v. Brown, Mo., 270

S.W. 275; State v. Miller, Mo., 292 S.W. 440; see Raymond Missouri Instructions, vol. 1, sec. 131, p. 123. But it is held that it should not be given where there is no conflict or basis for it in the evidence. State v. Lord, supra, 286 S.W.2d 737; State v. Abbott, Mo., 245 S.W.2d 876; State v. Douglas, 312 Mo. 373, 278 S.W. 1016.

There was conflict in this case. It is true that defendant admitted joining in the act, but whether the plow was taken because, as one witness expressed it, "we thought we might make some money," or, as another said, because of "just meanness, I guess," or as a drunken prank, depended upon which testimony was to be believed. Again, as one witness said, they took the plow to the Butler place because "Belvey had a tractor and he needed it for his tractor," whereas defendant's brother Belvey testified that he did not need or want the plow. There was decided conflict as to the defendant's good (or bad) reputation. And the character of most of the witnesses, even some of the defendant's character witnesses themselves, was also a matter which the evidence held to light. As example, in the cross-examination of one such character witness he was asked:

"Q. Have you ever been convicted of anything? A. Yes, sir, I sure have.

"Q. What was that? A. I violated the law a little."

Another of defendant's witnesses testified that he was out "on suspended sentence." The fact that some of the witnesses participated in the crime made their character a matter to be considered. And the fact that one other of these witnesses had been charged and convicted of this same crime and two of them had not been charged had some bearing on their

2. See Annotation, 4 A.L.R.2d 1077; State v. Willard, 346 Mo. 773, 142 S.W.2d 1046; Lukitsch v. St. Louis Public Service Co., 362 Mo. 1071, 246 S.W.2d 749, 756; State v. Abbott, Mo., 245 S.W.2d 876; Farmers' State Bank v. Miller, Mo.App., 26 S.W.2d 863; Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242, 247.

"interest" in the case. It can hardly be said that the defendant and the owner of the plow were disinterested.

 There need not be direct evidence regarding character in order to justify this instruction. Malone v. Franke, Mo., 274 S.W. 369, 373. "Many peculiarities which distinguish one individual from another come under this general term 'character.'" State v. Brown, Mo., 270 S.W. 275, 276; State v. McGehee, 308 Mo. 560, 274 S.W. 70. We think that substantially the same statement could be made concerning the "interest" or the feeling for or relation to the defendant or the prosecuting witness.

See State v. Garrett, 276 Mo. 302, 207 S.W. 784.

It is difficult to see how the defendant could possibly have been prejudiced by this instruction.

Our conclusion is that defendant got all that he was entitled to in the way of rulings on the admission of evidence and in the instructions.

The judgment of conviction is affirmed.

STONE, P. J., concurs.

McDOWELL, J., concurs in result.