## THE STATE OF KANSAS v. ED. BUSSEY.
### No. 10880.

1. TAKING GIRL FOR IMMORAL PURPOSES—*information for, charging in one count prostitution as purpose, in another count, concubinage, held, under circumstances, refusal to require State to elect not error.* The defendant was prosecuted for taking from her father and mother, without their consent, a girl under eighteen years of age, for the purposes of prostitution and concubinage. The information was in two counts: the first, that the taking was for the purpose of prostitution, and the second, that it was for the purpose of concubinage. The court refused the request of the defendant that the State be compelled to elect on which charge it would rely for a conviction; but, after a verdict finding defendant guilty on both counts, the State entered a *nolle prosequi* as to the first count, and judgment was given upon the second. *Held,* that as the charges arose out of the same transaction, and the proof as to the taking was necessarily the same as to both charges, and the evidence offered was entirely pertinent to the charge upon which the conviction rests, the refusal to require an election was not prejudicial to the substantial rights of the defendant.

2. ———— *the taking away need not be physical; inducements sufficient, though not immediately acted upon.* As to what constitutes a taking, under section 35 of the Crimes Act, the court charged the jury as follows: "In order to constitute a taking by the defendant, under the law, it is not necessary that the defendant should have used any force or have exercised any physical control over the girl in taking her away, or have been personally with her at the time of her leaving, or have gone in person with her; it is sufficient if he procured or caused her to go away, by any persuasion, enticement or inducment, offered, exercised or held out by him to the girl, or by furnishing her the means or money with which to go away." "It is not necessary that the persuasion, enticement, or inducement should have been made or offered, or the money or means furnished, at the time of the girl's leaving; but, if the defendant, for the purposes charged, persuaded, or enticed, or offered inducements to, the girl to leave her father and mother, and furnished her means with which to go away, and she did not go away at that time, but went away at a subsequent time, and such going away was caused by, and was the result of, the persuasion, enticement or inducements offered, or money or means furnished, by the defendant, such facts would show a taking within the meaning of the law." *Held,* that the instructions are not erroneous.

3. ——— *offense complete when, by enticement or otherwise, girl removed, for the illicit purpose, beyond the control of parents, without their consent.* The important element of the offense charged is the taking of the female from her parents, without their consent, for the illicit purpose; and this may be accomplished by the persuasion, enticement, device, or other active influence of the defendant; and when she is thereby removed beyond the control of her parents, or others having her in charge, the offense is complete.

4. ——— *where the parties agree to live as man and wife indefinitely, offense of concubinage complete when illicit relation begins.* A long-continued illicit intercourse is not necessary to constitute the relation of concubinage; but where a single woman and a man agree to cohabit with each other generally, as though the marriage relation existed between them, without fixing any limit as to the duration of the relation, she becomes his concubine as soon as such cohabitation begins.

5. ——— *consent of girl to go, or her previous solicitation of others to take her, no defense.* The fact that the female may have consented to go with the defendant, or that she may have solicited others to take her on another occasion, will not excuse the criminal act of the defendant.

6. QUALIFICATION OF JUROR—*as to impartiality, determined from his entire examination.* The condition of a juror's mind is to be determined from the whole of his examination; and the single remark that he once had an opinion in the case, based on a newspaper statement, is not conclusive of a disqualification, where it appears he had in fact no opinion as to the guilt or innocence of the defendant and that he was free from any bias or prejudice in the case.

7. REOPENING CASE—*after testimony closed, largely in court's discretion.* The matter of reopening a case upon the application of a party after the testimony has been closed and the witnesses of the opposing side discharged, is largely within the discretion of the court.

8. ADMONISHING JURY—*not required at each adjournment where jury kept together throughout trial.* Where the jury are kept together throughout the trial, under charge of a sworn officer of the court, it is not necessary that the statutory admonition provided for in section 235 of the Criminal Code should be given at each adjournment of the court.

9. EVIDENCE EXAMINED—*and held sufficient.* The testimony examined, and held to be sufficient to sustain the conviction and judgment.

Error from Elk District Court. Hon. C. W. Shinn, Judge. Opinion filed November 6, 1897. *Affirmed.*

*L. C. Boyle*, Attorney General, and *T. A. Kramer*, acting County Attorney, for the State.

*A. M. Jackson*, for appellant.

JOHNSTON, J. This was a prosecution, under section 35 of the Crimes Act, in which Ed. Bussey was charged with abducting Alice Bixler, who was only sixteen years of age, and taking her away from her father and mother, without their consent, for the purposes of prostitution and concubinage. The information contained two counts. The first charged that he took her away for the purpose of prostitution, and the second, that he took her away for the purpose of concubinage. The trial resulted in a verdict finding him guilty upon both counts; but the State dismissed as to the first count of the information, and he was adjudged guilty upon the second count and sentenced to confinement in the penitentiary at hard labor for five years. From that judgment he appeals.

The testimony upon which the conviction rests tends to show, among other things, that the defendant was a traveling man about thirty-four years of age; that he met Alice Bixler, who was sixteen years of age, and Maud McIlvain, of about the same age, at their home, in Augusta, and, after some conversation, proposed to take them to Kansas City, where they could stay with his friends, who had plenty of money; and among the attractions suggested was, that they could have fine clothes, attend the theaters and visit the resorts. He contrasted the small town of Augusta, which he said had nothing but churches, with Kansas City and its numerous attractions. The girls listened to his alluring talk, and arranged to go with him at a certain time and upon a certain train. He directed them not to take the train at the depot,

but to go down to a junction near by, and, when they went aboard, to go into the ladies' closet and remain there until he could ascertain whether any Augusta people were upon the train. They went to the junction, as directed, but not being in the right position when the train stopped they were unable to get aboard, although the defendant was there and signaled them from the train. Afterward, he wrote them a note expressing disappointment at their failure, and remarking that he had arranged for a lovely trip with them. Some further suggestions were made as to future plans, and he also asked them to destroy the note. The following week he returned to Augusta, again met the girls, and suggested a new plan of leaving home. He advised them to tell their parents that they were going into the country for several days on a visit with relatives, but instead of doing so they should go to the railroad and take the train at the water-tank, go first to Wichita, and from there take another train to Winfield, where he would join them, and together they would go to Kansas City. When they reached Winfield, they were to take a hack, which he would provide for, and go to a hotel, which he named, register under assumed names, and remain there for a few hours until the night train arrived, when they would start for Kansas City. The plan was agreed to by the girls, and, that there might be no mistakes in carrying it out, the defendant met them again and had them rehearse the plan and the different steps that were to be taken. He furnished them money to pay railroad fare and expenses, and at the appointed time they started; getting on the train at the water-tank and otherwise carefully conforming to his plan. They reached Winfield on time, found the hackman waiting for them, and found every provision agreed upon had been made by the defendant. He

went to Winfield by another route. The hackman employed by the defendant for that purpose took them up a side street to the hotel where the defendant had arranged for their entertainment. They registered under assumed names, as they had agreed to do, and, according to a previous plan, the defendant met them upon the street near the hotel and showed them the depot from which they were to depart later in the evening and gave them some further directions as to their course. That night all three took the train for Kansas City, where they arrived the next morning. All expenses were paid by the defendant, and, before leaving the train, he gave them some money with which to pay street-car fare, advising them not to take the same car which he did. When they left the street car, he took them to a hotel, and registered himself as " E. J. Stone, Omaha," and the girls as " Miss McPherson and sister, Omaha." He asked the clerk for connecting rooms, stating that the girls were relatives of his whom he was taking to school. Two rooms were assigned to them, between which there was a connecting door, and there he remained with the girls most of the day. He took them down for meals, and to the theater in the evening. They had a conference as to the kind of clothing which they needed and which he proposed to purchase for them, a memorandum of the articles being taken. During the day he tried to induce Alice to go to bed with him, but she declined. At night he told her that she would have to sleep with him, and so they undressed and retired together. Several attempts at sexual intercourse were made during the night, but she cried, and complained that the pain caused could not be endured by her. Her cries and protests were such that they were heard by a guest in an adjoining room, when the defendant concluded

to desist. On the next morning he said to them : "The way you girls do, you will either have to go home or go to a house. I will leave the matter to you." In the same connection he said to them that he knew of a house to which they could go, where the woman in charge would keep them and dress them as well as he could ; that they could go out in the daytime, but that at night they would have to stay in and entertain men, and could get half of what they made. He recommended the woman in charge very highly, and said she would do everything for them and give them very nice clothes. Soon afterward, he was arrested, when he insisted that he knew nothing about the girls from Augusta, and that they did not come to Kansas City with him.

Numerous errors are assigned by the defendant, the first of which is the refusal of the court to grant his motion for a continuance. Such a motion was made, but we are unable to discover that it was presented to the court or any ruling made thereon. An examination of the affidavits in support of the motion satisfies us that if the motion was refused no error was thereby committed. It does not appear that some of the proposed testimony was competent, or that sufficient diligence was shown in the effort to obtain the other proposed testimony.

Objection is next made to a juror who was challenged by the defendant. On his *voir dire* he stated

6. Qualification of juror determined, how.

that he had heard something of the case from a newspaper statement, and from what he read had formed an opinion in the case. A further inquiry, however, developed the fact that the view he had was based only upon the newspaper statement, and that he did not form any opinion as to whether the statement he read in the paper was true, and that the opinion to which he re-

ferred was that, if the facts he read were true, then he had an opinion as to the guilt or innocence of the defendant. He further stated that he had then no opinion as to whether the defendant was guilty of the offense or not, and that he was free from any bias or prejudice, and could try the case as fairly as if he had not read the article. As was stated in *The State v. Spaulding* (24 Kan. 5), the mere statement that he has an opinion is not always conclusive, "but the real condition of the juror's mind is to be determined from the whole of his testimony;" and from the whole of the examination of this juror, we are unable to say that he was disqualified; indeed, when his entire examination is read, it leads us to think that he was a fair-minded man and a competent juror.

The next objection to which our attention is called is, that the court permitted Alice Bixler to state the contents of the note alleged to have been written to the girls by the defendant after the failure of the first attempt to leave Augusta. It is argued that there was no foundation laid for its admission, no testimony as to the handwriting or that it had been sent by the defendant. It appears that the note was destroyed by the girls, in accordance with the suggestion therein contained; and, therefore, if sufficiently identified, secondary evidence of its contents was admissible. It is immaterial as to the handwriting of the note, or whether the correct signature of the defendant was attached. It is enough if it was shown to be a communication from the defendant to the girls, that he had knowledge of it, that he sent it or caused it to be sent, and intended that it should be received. There is no difficulty in the matter, as he supplied the proof of identification. He admitted the existence of the note and his knowledge of the same by inquiring if they had received it and whether they had brought

it with them. When told that they had destroyed it, he remarked: "That's all right; so long as you did n't leave it behind."

Complaint is made that the court sustained an objection to the following question: "Do n't you remember a short time before this occurred, when he was there (Frank Yates), wanting him and another boy to take you and Maud off on a trip?" The testimony was wholly immaterial, and the ruling was therefore not erroneous. The nature of the trip and the character of the young men are not indicated. The incident was not shown to have had any relation to the act of the defendant. The fact, if it were true, that they solicited others to take them away, would not excuse the act of the defendant in alluring them away at another time. The imprudence of the girls, or that they gave their consent to go with others or with the defendant, is immaterial. The gist of the offense is the taking away of the girl from the father and mother, without their consent, for the purpose of concubinage. We, therefore, conclude that the exclusion of this and other like testimony was not erroneous.

At the close of the testimony, the defendant asked that the case be reopened in order that Maud Mc-Ilvane might testify in his behalf. It appears that counsel for the State, anticipating that she might be called by the defendant, subpœnaed witnesses to impeach her, but when counsel for defendant announced that they had closed, these impeaching witnesses were discharged. Maud had been present in the court-room for some time before the testimony for the defense was closed, and counsel for defendant knew of her presence. The court denied the request. The reopening of the case at that time was discretionary with the court, and, in

7. Reopening of case in court's discretion.

view of all the circumstances, including the conduct of the proposed witness, we do not think that there was an abuse of discretion in denying the application.

Complaint is made of the ruling of the court on the motion of the defendant to require the State to elect upon which count of the information it would rely for a conviction. The motion was interposed at the close of the testimony for the State, and was overruled. As we have seen, the verdict of the jury found the defendant guilty on each of the counts, but, before the sentence, a *nolle prosequi* was entered by the State as to the first count; and hence he was only sentenced upon the second count, which charged a taking away for the purpose of concubinage. The taking for the purpose of prostitution and the taking for the purpose of concubinage constitute two offenses, which cannot be properly joined in a single count. *State v. Goodwin*, 33 Kan. 538. Separate and distinct felonies, however, may be charged in separate counts where the offenses are of the same general character, requiring the same mode of trial, the same kind of evidence, and the same kind of punishment. *The State v. Hodges*, 45 Kan. 389. It is conceded that the joinder of the two counts was proper for the purpose of meeting the different phases of the evidence, and, in cases where the same transaction is charged differently in several counts of the information, an election is never regarded as necessary. It is suggested that the defendant may have intended to take the girl away with the intention of making her his concubine and also to make a prostitute of her. An inquiry is made : If a man intends to cohabit with a woman in sexual commerce, without authority of law, can he not also intend to expose her to indiscriminate sexual intercourse for gain? If it is granted, however, that he cannot have had both

1. Refusal to require state to elect, not error, when.

intentions, and could not have been convicted of both offenses, he was not prejudiced by the refusal to compel an election. The charges in the information arose out of the same transaction, and the proof as to the taking was necessarily the same as to both. The evidence introduced was entirely pertinent to the charge upon which the conviction rests, and therefore the failure to require an election was not prejudicial to the substantial rights of the defendant. *The State v. Fisher*, 37 Kan. 404.

The next objection is that the court on one occasion failed to give the jury a proper admonition. Section 8. Admonishing jury. 235 of the Criminal Code provides for an admonition when the jurors are permitted to separate. The admonition complained of is not as full as that required by the statute. The record discloses, however, that the jurors were not permitted to separate from one another, but were kept together throughout the trial, under charge of sworn officers of the court. There having been no such separation as the statute contemplates, an admonition at each adjournment was not required.

Complaint is made that the court did not correctly state the law to the jury as to what con- 2. The taking away need not be physical. stitutes a taking under section 35 of the Crimes Act. Upon this branch of the case the following instructions were given:

"In order to constitute a taking by the defendant under the law, it is not necessary that the defendant should have used any force or have exercised any physical control over the girl in taking her away, or have been personally with her at the time of her leaving, or have gone in person with her; it is sufficient if he procured or caused her to go away by any persuasion, enticement or inducement offered, exercised or held out by him to the girl, or by furnishing her the means or money with which to go away.

"It is not necessary that the persuasion, enticement or inducement should have been made or offered, or the money or means furnished, at the time of the girl's leaving; but if the defendant, for the purposes charged, persuaded or enticed or offered inducements to the girl to leave her father and mother, and furnished her means with which to go away, and she did not go away at that time, but went away at a subsequent time, and such going away was caused by and was the result of the persuasion, enticement or inducements offered or money or means furnished by the defendant, such facts would show a taking within the meaning of the law."

In connection with these instructions, the jury were told that if the going away was voluntary, and not the result of the inducements or persuasion offered by defendant or the means or money furnished by him, then the defendant should be acquitted. To constitute a taking away, it was not necessary

3, 5. Offense of abduction complete, when.— Consent of girl no defense.

that he should have seized the girl's person or carried her bodily away from her parents. The important element of the offense is that she be taken, for the unlawful purpose, from her parents, and without their consent. In this instance, Alice was taken from her parents in Butler County, where she resided. The defendant was not present, it is true, when she left, nor was his personal presence necessary. She was induced to leave by the influence and persuasion of the defendant. That influence was exerted, the inducements held out, and the means for leaving furnished, in Butler County, where her parents resided. It is immaterial whether he took her by the hand and led her away, sent a special conveyance to carry her from her parents, or planned and provided that she should go in a public conveyance. It matters not what agencies he provided or employed to take her away; it is enough that he caused or procured her to be taken against

44—58 KAN.

the wish of her parents, and that it was done for the illicit purpose. He cannot escape liability because he may have been in hiding, or absent from Butler County, at the time of her leaving her parents; and the fact that he did not meet her from the time of leaving until she reached Winfield, in another county, will not relieve him from the charge of taking in Butler County. *The State v. Overstreet*, 43 Kan. 299; *Henderson v. The People*, 124 Ill. 607.

There is sufficient evidence to show that she was taken with the intent to make her a concubine. His statements and acts before she was taken, together with what occurred at Winfield and at Kansas City, may all be considered in determining what was his intent; and from all of these circumstances we may fairly infer that he intended to cohabit with her in sexual commerce without the authority of law or a legal marriage. The court gave a fair definition of the word "concubine," but complaint is made of the following instruction: "To constitute concubinage it is not necessary that the cohabitation should be continuous for any length of time. If there is cohabitation on one occasion, without lawful marriage, it constitutes concubinage." The only purpose of the court in defining concubinage was to enable the jury to arrive at the intent of the defendant. He was not charged with making Alice Bixler his concubine, but was charged with taking her away from her parents with that purpose. Since the only bearing of the definition was upon the intent of the defendant as manifested by his subsequent conduct, the instruction is not of great consequence. The court did not state, as the defendant contends, that one act of sexual intercourse without lawful marriage constituted concubinage, but rather that cohabitation, a much broader term, on one oc-

4. Offense of concubinage complete, when

casion was sufficient. When a man and woman, not married, agree to cohabit with each other as though the marriage relation existed between them, without fixing any limit as to the duration of the relation, she becomes his concubine as soon as cohabitation begins. As the trial court stated, a long-continued illicit intercourse is not necessary to constitute the relation of concubinage ; and, therefore, we think the use of the words " one occasion," although unnecessary, could not have misled the jury.

There are some other criticisms of the charge, but we think that on the whole it fairly presented the law of the case to the jury, and that the defendant has no cause to complain.

The claim that the testimony is insufficient to sustain the conviction cannot be upheld. A reading of the whole testimony, some of which has been recounted, satisfies us that it abundantly upholds the verdict, and that a correct result was reached. The judgment of the District Court will, therefore, be affirmed.