# THE STATE v. WILLIAM E. KNOST, Appellant.

### Division Two, November 19, 1907.

1. **ENTICING FEMALE: Concubinage: Information.** An information charging defendant with taking away a minor female for the purpose of concubinage, is not defective because it does not charge actual concubinage, nor because it does not charge that he took her away for the purpose of concubinage with himself.

2. ———: ———: **Intent.** The gravamen of the offense of taking away a female for the purpose of concubinage, is the intent with which the enticing and abduction are done, and the offense is complete as soon as the female is removed beyond the power and control of those having lawful charge of her, whether any illicit intercourse ever takes place or not.

3. **LEADING QUESTIONS: Discretion.** The asking of leading questions is a matter within the discretion of the trial court.

4. **ENTICING FEMALE: Concubinage: Evidence.** Evidence held sufficient to justify a conviction of taking away a female for the purpose of concubinage.

5. ———: ———: **Cohabit: Failure to Define.** There was no error in the failure of the trial court to define the word "cohabit," since it is a word in general use, and is in no sense a word of art.

## Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

AFFIRMED.

*Jeptha D. Howe* and *Alphonso Howe* for appellant.

(1) The information is fatally defective. It fails to charge a public offense or this defendant with the commission of any offense. It is silent as to whom the concubinage was to be committed with. It fails to charge that defendant took prosecutrix away for the purpose of concubinage with himself. The two ele-

ments, the taking away, etc., followed by actual "concubinage" must be alleged and proved. State v. Jones, 191 Mo. 653; State v. Adams, 179 Mo. 334; State v. Gibson, 111 Mo. 92; State v. Boobst, 131 Mo. 328; State v. Neasby, 188 Mo. 467. (2) The court erred in refusing to instruct the jury to acquit the defendant, as requested, at the close of the State's case. Where a statute makes an offense to consist of an act coupled with a specific intent, the doing of the act raises no presumption that the act was done with this specific intent; and where a specific intent is required, the mere doing of the act will not raise the presumption that it was done for such prohibited purpose. There must be a "taking away," for the purpose of "concubinage," followed by the actual "concubinage." State v. Gibson, 111 Mo. 92; State v. Fox, 148 Mo. 517; State v. Johnson, 115 Mo. 496.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1) The information, which is accompanied by the affidavit of the assistant circuit attorney, is sufficient in form and substance. State v. Johnson, 115 Mo. 486; R. S. 1899, sec. 1842; Kelley's Crim. Law, sec. 548; State v. Jones, 191 Mo. 662. (2) When all of the evidence is considered, it will readily be seen that there was substantial evidence of defendant's guilt, and that the evidence fully comes up to the requirements in this kind of case. State v. Richardson, 117 Mo. 586; State v. Bussey, 58 Kan. 679; State v. Jones, 191 Mo. 653; State v. Beverly, 100 S. W. 465.

GANTT, J.—On October 23, 1906, the circuit attorney of the city of St. Louis filed an information, duly verified, charging that defendant, on the 22d of September, 1906, at the city of St. Louis, one Fannie Six, a female under the age of eighteen years, from one Mathias Six, who then and there had the legal charge

of the said Fannie Six, feloniously did take away for the purpose of concubinage, against the peace and dignity of the State. The defendant was duly arraigned and pleaded not guilty, and at the December term, 1906, was tried and found guilty and his punishment assessed at two years in the penitentiary. After unsuccessful motions for new trial and in arrest of judgment, defendant was sentenced in accordance with the verdict, and from that judgment has appealed to this court.

The evidence on the part of the State tended to prove that on the 22nd of September, 1906, Fannie Six was fifteen years old; she lived with her father and mother on Kosciusko street in the city of St. Louis, and worked at the Liggett-Meyers tobacco factory. Defendant is a brother-in-law of prosecutrix and also resided in said city; he had separated from his wife about two months prior to the commission of the offense charged. He persuaded prosecutrix to leave her father's home about the latter part of September, 1906, and took her to various hotels and rooming houses in the city of St. Louis, where they were registered as man and wife and occupied the same room. Finally defendant procured a room on Chouteau avenue, where he and prosecutrix went by the name of Mentry; they occupied this room for about a week, ostensibly as husband and wife, and the defendant was arrested in this room by a police officer, who had gone with the defendant's wife, about eight o'clock at night. Defendant and the prosecutrix were just about sitting down to supper when he was arrested. During the time they occupied this room, they occupied the same bed. At this house, prosecutrix, at the instigation of defendant, told that they had been married three months. The hotel registers of the two hotels where prosecutrix testified she and defendant occupied rooms were offered in evidence, and one of them showed the name of Charles Wilson and wife, Chicago, Illinois, and the other John

Winter and wife, Chicago, written in the defendant's handwriting. The age of the prosecutrix was conclusively shown to have been fifteen years. Neither the defendant nor his wife testified in the case. The defendant offered one witness to prove his good reputation. The defendant also offered evidence by the gentleman and his wife to the effect that the defendant had rented a room from them during the time the prosecutrix claimed that she and the defendant were rooming together, and that defendant's room seemed to have been occupied every night except three or four. These witnesses, however, admitted that they did not know who occupied the room. It seems that after the defendant was arrested, there was a reconciliation between him and his wife. Defendant also offered in evidence a written statement prepared by one of defendant's attorneys and signed by the prosecutrix. In this statement, she said, in substance, that she was taken by her relatives before an attorney at law in the said city, and was there threatened "with durance vile" if she did not make certain statements which were the cause of the defendant's arrest, and that at said visit to the office of the said attorney, she was admonished by him and her relatives not to mention to the assistant circuit attorney that she had been questioned by a lawyer, and that she was instructed by said attorney and her relatives to appear in court on the day of the trial of the defendant with her hair down her back in braids and to wear a short dress so as to give herself a youthful appearance when taking the stand to testify for the State.

I. It is insisted that the information is fatally defective because it is silent as to whom the concubinage was to be committed with, and fails to charge that defendant took her away for the purpose of concubinage with himself. It is further insisted that the two elements, the taking away and the actual concubinage, should have been alleged and proved. The informa-

tion is drawn under section 1842, Revised Statutes 1899, which provides: "Every person who shall take away any female under the age of eighteen years from her father, mother, guardian or other person having the legal charge of her person, either for the purpose of prostitution or concubinage, and any father, mother, guardian or other person having the legal charge of her person, who shall consent to the same, shall, upon conviction thereof, be punished by imprisonment in the penitentiary not exceeding five years." This statute has often been before this court for construction, and it has been uniformly ruled that it was not necessary that the taking away should have been accompanied by actual cohabitation, but that the offense is complete when the minor female is taken away from her father or legal custodian for the unlawful purpose designated in the statute. It is clear, therefore, that the objection alleged against this information, that it fails to charge actual concubinage, is without merit. [State v. Bobbst, 131 Mo. l. c. 338; State v. Gibson, 111 Mo. l. c. 98; Slocum v. People, 90 Ill. l. c. 282; Henderson v. People, 124 Ill. l. c. 614.] These cases all hold that the gravamen of this offense is the purpose or intent with which the enticing and abduction are done, and hence the offense, if committed at all, is complete the moment the subject of the crime is removed beyond the power and control of her parents or of others having lawful charge of her, whether any illicit intercourse ever takes place or not. Subsequent acts are only important as affording the most reliable means of forming a correct conclusion with respect to the original purpose and intention of the accused. [State v. Bussey, 58 Kan. 679.] As to the other alleged defect in the information, to-wit, that it did not charge that defendant took her away for the purpose of concubinage with himself, it is sufficient to state that this is a statutory offense, and an indictment which states every

fact and circumstance descriptive of the offense as defined by the statute, and follows the language of it, is sufficient. [State v. Johnson, 93 Mo. 317.] By reference to the information in this case, it will be seen that it individuates every element of the statute. It names the defendant as the person and the time when he took away Fannie Six from her parents, and charges that she was a female under the age of eighteen years, and that at the time she was in the legal charge of her father, Mathias Six, and that defendant took her away feloniously for the purpose of concubinage. It was not at all essential that the information should charge that the intended concubinage should be with himself. As said by this court in State v. Gibson, 111 Mo. 98, the word concubinage of itself indicated that his intent and purpose was that the prosecutrix should cohabit with a man to whom she was not legally married, and his offense was just as great whether he intended the concubinage to be with himself or with some other man to whom the prosecutrix was not legally married. Without further discussion, in our opinion, the information was sufficient.

II. As to the alleged error in permitting the circuit attorney to ask leading and suggestive questions, it is only necessary to state that the decisions in this State are all in accord in holding that the asking of such questions is a matter within the discretion of the trial court. [State v. Bateman, 198 Mo. 222, and cases there cited.]

III. There was no error in refusing to instruct the jury to acquit the defendant. The evidence was amply sufficient to sustain the charge in the information. No good purpose can be subserved by reproducing it in this opinion.

IV. The instructions in the case were full and complete and stated the law as often declared and approved by this court. [State v. Adams, 179 Mo. 337;

State v. Jones, 191 Mo. 653.] As to the objection that the court did not define the word "cohabit" to the jury, it is only necessary to add that this is a word in general use, in no sense a word of art, and it is only a fair presumption that the jury fully understood the word in its usual and ordinary acceptation, and there was no error in failing to attempt a definition of it. We have carefully examined all the assignments of error, and, in our opinion, they furnish no ground for the reversal of this judgment, and it is accordingly affirmed.

Fox, P. J., and Burgess, J., concur.