State v. Baldwin.

THE STATE v. WILLIAM BALDWIN, Appellant.

Division Two, November 24, 1908.

1. INFORMATION: Concubinage. The information in this case does not fail to charge the defendant with taking away the prosecuting witness from her father, who it is charged had her in his legal control and custody; but is sufficient.

2. CONCUBINAGE: Evidence: Consent of Parent. It is not improper, in a concubinage case, to permit the father of the minor prosecutrix to testify that he did not give his consent to her going away with defendant. Such statement by the father is immaterial, and even if it were incompetent its admission would not constitute reversible error.

3. HABITUAL CRIMINAL: Identification: Prior Conviction. Where the defendant while on the witness stand admitted that he had been convicted of an offense prior to the one charged in the information, the admission of the records of the circuit

State v. Baldwin.

court and of the warden of the penitentiary, showing a conviction, sentence and discharge of a person by the same name, without any further identification of said person as being the same defendant, is not reversible error, but sufficient, in the absence of testimony to the contrary, to submit the question of whether he was the same person or not to the jury, and to authorize them to find the issue against defendant.

4. **CONCUBINAGE: Instruction: Previous Chaste Character.** It is not error to instruct the jury in a concubinage case that, if they should find the prosecuting witness was of unchaste character and had previously had sexual intercourse with defendant, such facts do not constitute any defense to this prosecution.

5. ———: ———: **More Than One Act of Intercourse.** An instruction which tells the jury, among other things, that if defendant did take the prosecuting witness from her father, "and that she was at the time a female under the age of eighteen years, for the purpose of cohabiting with her in sexual intercourse for any length of time for more than one single act of sexual intercourse, then the defendant is guilty of the crime of concubinage as charged in the information," is not erroneous.

6. ———: ———: **Taking Away: From Immediate Possession: Physical Force.** Where defendant met the fifteen-year-old girl on the street, and the instruction told the jury that "in order to find defendant guilty it is not necessary that the jury should find that defendant took the prosecuting witness from the immediate possession, house or home of her father, but it is sufficient if he took her from the control and possession of her father and took her out of the neighborhood in which she had lived prior thereto, so that her whereabouts were unknown to the father, without his consent," it is not reversible error to add thereto, "It is not necessary that the defendant should have used any physical force in taking her away; it is sufficient in law if you find and believe from the evidence that defendant induced or persuaded her to go away with him from her father's home for the purpose of having sexual intercourse with him."

7. ———: **Verdict: Habitual Criminal.** The verdict found "the defendant guilty of habitual criminal and taking away a female for the purpose of concubinage, as charged in the information," etc. *Held*, informal, but sufficient to support a judgment. It was not necessary that the jury make a specific finding of a former conviction, but the words used indicate that they embraced that finding in their verdict, and they clearly found that he was guilty of taking away a female.

8. ———: **Instruction: Not Married.** Where there was no pretense at the trial that defendant and the prosecuting witness were married, it was not reversible error to fail to instruct the jury that they must find that they were not married before they can convict the defendant of concubinage.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher, Judge.*

AFFIRMED.

*Jones H. Parker* and *I. Joel Wilson* for appellant.

(1) The information is insufficient in that it fails to charge defendant with taking away from her father Florence Hamann. State v. Adams, 179 Mo. 341. (2) It was error to admit, over the objection of defendant, the statement of William Hamann, the father of the prosecuting witness, to the effect that he did not give his consent to his daughter's going away with defendant. This testimony was foreign to the issues and therefore irrelevant, and being admitted error was committed. Sherwood's Com. on Crim. Law, p. 108. Defendant could not be heard to say in defense that he had procured the consent of the father to take away his daughter, as the father had no authority to give his consent, in fact should he do so he would himself be guilty of a felony under the statute. And so with the admission of the testimony above referred to the State is permitted to inject into the minds of the jury a poison for which the defendant has no antidote. (3) It was error to give the second instruction submitted to the jury by the court of its own motion. In construing the law governing this class of cases in a number of jurisdictions, including our own, where the statute is silent as to the character or reputation of the prosecutrix for chastity, the courts are almost a unit in holding that chastity should be exacted of the female to bring her within the protection of the law. Kerr v. State (Ind. Terr.), 104 S. W.

809; State v. Kelley, 191 Mo. 691; State v. Johnson, 115 Mo. 492; State v. Gibson, 111 Mo. 92; Polk v. State, 40 Ark. 486; Caldwell v. State, 73 Ark. 139; Andre v. State, 5 Iowa 398; Boak v. State, 5 Iowa 430; State v. Higdon, 32 Iowa 262. (4) It was error to submit the third instruction to the jury given by the court of its own motion. When the court gave this instruction and incorporated in it the following: "For any length of time for more than one single act of sexual intercourse," it incorrectly declared the law governing the case. State v. Johnson, 115 Mo. 496; State v. Adams, 179 Mo. 343; State v. Rorebeck, 158 Mo. 130; State v. Bobbst, 131 Mo. 338. The gravamen of the offense is the intent defendant had at the time he took the prosecutrix away from her father, what he did subsequent to the taking could only be shown for the purpose of establishing the object or intent he had in mind at the time of the taking. State v. Adams, 179 Mo. 343; State v. Rorebeck, 158 Mo. 130; State v. Johnson, 115 Mo. 496; State v. Bobbst, 131 Mo. 338. This instruction is misleading and confusing. It conveys the impression that if defendant took Florence Hamann away from her father, and indulged in more than one act of sexual intercourse with her, he would be guilty of the charge in the information. (5) The giving of the fourth instruction by the court of its own motion, was error. The statute upon which this prosecution is bottomed does not prohibit the taking away of a female under the age of eighteen years from her father for the purpose of having sexual intercourse with her. State v. Gibson, 111 Mo. 98; State v. Rorebeck, 158 Mo. 130; State v. Bobbst, 131 Mo. 338; State v. Johnson, 115 Mo. 496. An instruction which authorizes the jury to return a verdict of guilty against a defendant charged with "taking away a female under the age of eighteen from her father for the purpose of concubinage," if they believe and find

from the evidence that he took her away for the purpose of having sexual intercourse with him, misdirects them as to the law in the case. The court, in effect, in this instruction, tells the jury that in order to find defendant guilty the only fact necessary to be proved is that he took her away from her father with the intention of having sexual intercourse with her. (6) The court committed error in refusing to give the following instruction which was offered by defendant: "The court instructs the jury that if you believe that defendant took the prosecutrix away from her father for the purpose of having sexual intercourse with her merely, you will find the defendant not guilty." This instruction correctly declares the law and should have been given. State v. Gibson, 111 Mo. 98; State v. Adams, 179 Mo. 343; State v. Rorebeck, 158 Mo. 130; State v. Bobbst, 131 Mo. 338; State v. Johnson, 115 Mo. 496. (7) The motion in arrest of judgment should have been sustained. No valid judgment could be rendered upon the verdict. It did not respond to the whole information or charge. State v. Harmon, 106 Mo. 635; State v. Manicke, 139 Mo. 548; State v. Austin, 113 Mo. 538; State v. Moore, 121 Mo. 514; Beems v. Beekman, 3 Wend. 667; 3 Graham & Waterman on New Trials, p. 1378; State v. Pierce, 136 Mo. 40; State v. Modlin, 197 Mo. 379; State v. DeWitt, 186 Mo. 61; State v. Cronin, 189 Mo. 670.

*Herbert S. Hadley,* Attorney-General, and *F. G. Ferris,* Assistant Attorney-General, for the State.

(1) (a) The information charges the offense of taking away a female for purpose of concubinage in form approved by this court. State v. Johnson, 115 Mo. 486; State v. Jones, 191 Mo. 655. (b) The information sets forth the prior conviction of rape with sufficient particularity. Joyce on Indictments, sec. 367. (2) It is not necessary that the taking away should

have been accompanied by actual cohabitation. "The gravamen of this offense is the purpose or intent with which the enticing and abduction are done, and hence the offense, if committed at all, is complete the moment the subject of the crime is removed beyond the power and control of her parents, or of others having lawful charge of her, whether any illicit intercourse ever takes place or not. Subsequent acts are only important as affording the most reliable means of forming a correct conclusion with respect to the original purpose and intention of the accused." State v. Knost, 207 Mo. 22; State v. Beverly, 201 Mo. 550; 4 Elliott on Evidence, sec. 2744. (3) It is no defense that the prosecutrix consented to go away with defendant, or consented to have sexual intercourse with him. State v. Bobbst, 131 Mo. 338; State v. Jones, 191 Mo. 660; Clark & Marshall on The Law of Crimes, p. 306. (4) It is immaterial whether the girl was previously chaste. State v. Johnson, 115 Mo. 491; State v. Bobbst, 131 Mo. 336. (5) The evidence was sufficient to support the verdict of the jury. State v. Beverly, 201 Mo. 550; Bishop on Statutory Crimes, sec. 637; 4 Elliott on Evidence, p. 50. (6) No error was committed by the trial court in giving instructions. State v. Adams, 179 Mo. 338; State v. Jones, 191 Mo. 653. (7) (a) Defendant's refused instruction was properly refused. It does not properly declare the law. State v. Bobbst, 131 Mo. 338. (b) The instructions given by the court presented the case in all its features fairly to the jury, and it was not error to refuse the instruction asked by defendant. State v. Barrington, 198 Mo. 106. (8) Defendant's former conviction of crime was properly proved by the records of the trial court. Carp v. Insurance Co., 203 Mo. 295.

FOX, P. J.—This is an appeal from a judgment of conviction against the defendant in the circuit court

of the city of St. Louis. On the 15th day of July, 1907, the assistant circuit attorney of the city of St. Louis filed an information, duly verified, in the circuit court of said city, charging the defendant, first, with having served a term in the penitentiary for the offense of rape, and then proceeded to make the charge of taking one Florence Hamann, a female under the age of eighteen years, from her father, having charge of her person, for the purpose of concubinage. August 19, 1907, the defendant was duly arraigned upon the information and entered his plea of not guilty. The cause was then continued to the October term of said court, and on the 9th day of October, 1907, the defendant was put upon his trial. The evidence upon the part of the State developed at the trial tended to prove substantially the following state of facts:

On the 21st day of May, 1907, Florence Hamann, a girl in short dresses, fifteen years of age, was residing at 207 Douchouquette street, in the city of St. Louis, with her father, William Hamann, who had legal charge of her person. On the morning of said day, the girl Florence left her father's home in search of employment. On Chouteau avenue, in said city, while in company with two other girls, casual acquaintances, Lillie Schafenberg and Finnie Dishbing, she met defendant, a stranger to her and to her companions. Defendant, under pretext that he could secure a position in a telephone office for her, induced Florence to go with him. He took her to a room in the Clover Leaf Hotel in said city. Arriving in the room, Florence screamed, but defendant threatened her and put a bed against the door. He kept her in the room about two hours, during which time he had sexual intercourse with her. After leaving the Clover Leaf Hotel, defendant kept Florence in his company throughout the day. In the afternoon he secured a room for himself "and wife" at the boarding house

State v. Baldwin.

of Mrs. Beamer, 715 South Broadway in said city, and he borrowed a bucket from Mrs. Beamer for coffee. Defendant and Florence spent the night together in said room, having sexual intercourse several times during the night. Mrs. Beamer did not know that the girl was with defendant in the room until next day. Defendant, upon his lawful relation to Florence being challenged that day by Mrs. Beamer, first asserted that the girl was his wife, and admitted that he had slept with her the preceding night. Later he admitted that Florence was not his wife, but claimed he had found her on the street and had given her shelter at Mrs. Beamer's house as a matter of charity. He proposed to give Mrs. Beamer $50 with which to buy clothes for the girl and find her a job. Mrs. Beamer kept the girl over night. Next afternoon defendant, in company with a young man called "Busybody," came back and announced to Mrs. Beamer that he had made arrangements to get the money. Defendant and "Busybody" took Mrs. Beamer and the girl to the office of Mr. Parker, defendant's lawyer, who represented himself as a doctor. Defendant said he wished to have the girl examined to see that he had done nothing wrong with her. She was closeted there in a private office with the "doctor" for some time, during which time, according to the testimony of the girl, the "doctor" examined her and had intercourse with her. When the "doctor" came out of the private office he said he would write a receipt for the money for Mrs. Beamer to sign. When the receipt was presented to Mrs. Beamer for her signature, she refused to sign it, for the reason that it appeared to be a written demand for the payment of money to avoid prosecution. Mrs. Beamer then went on home and never saw Florence again until the day of the trial. Mrs. Beamer notified the police. The day before the date of the crime Mrs. Beamer had bought her said boarding house. Among

the boarders whom she received from her predecessor was "Busybody," whom she summarily dismissed the night after the incident at Parker's office. After Mrs. Beamer left the office, defendant told Florence that her father had telephoned he was going to kill her, and he told the boy "Busybody" to take her out of the office. "Busybody" took her to the house of a Mr. Moore, from which place he immediately took her to defendant's stable. Shortly after they arrived at the stable, Baldwin appeared there and took her up into the stable loft, where he kept her about two days. During the two days Baldwin did not stay with her upstairs. He sent food up to her and threatened her harm if she came downstairs. Saturday, May 24, 1907, one Anderson came to Florence at the stable, told her Baldwin had been arrested, and that she should leave. She had never before met Anderson. He took her to East St. Louis, thence to Chicago, and thence to Grand Haven, Michigan, where he married her. After more than a week's absence from St. Louis, Anderson and Florence returned there. Florence admitted that on two occasions before she met defendant she had had sexual intercourse in East St. Louis with a boy named Eddy. She said that her husband, Anderson, communicated to her a sexual disease. The testimony of Florence was fully corroborated by the testimony of Lillie Schafenberg, Amelia Beamer, and her father, in so far as their connection with the facts of the case extended. It was shown by the father that he did not know of or consent to his daughter being with defendant. Court records of the trial court, copy of judgment, with sheriff's return, and certified copy of records of the Missouri penitentiary were introduced in evidence, showing that defendant was convicted of the crime of rape in said court in October, 1899, and that he served a five-year term therefor,

which ended under the three-fourths rule July 1, 1903, when he was discharged.

Defendant, in his own behalf, testified that he met Florence on the morning of May 21, as shown by the State, and that she voluntarily went with him to a room in the Clover Leaf Hotel for purposes of sexual intercourse. He said, however, that soon after entering the room he discovered that she was diseased, and he left her at once without having sexual intercourse with her. He said that he did not take the girl to Mrs. Beamer's house; that he did not get a room there, and that he was not there that day or night. Several witnesses were put upon the stand, whose testimony tended to prove that he was working with teams all day of the day he met Florence, except about twenty minutes, when he went to the Clover Leaf Hotel with her. Defendant admitted being at Parker's office at the time proved by the State. He said he went to Mrs. Beamer's and got her and Florence to go to Attorney Parker's office to see if he could not arrange to escape being a victim of an attempted blackmail, framed up on him by Mrs. Beamer and Florence, as he had been told by "Busybody." He requested that the girl be examined by Doctor Parker, a brother of Attorney Parker, who had an office associated with that of the attorney, and the examination was accordingly made by the doctor, who discovered that the girl had gonorrhea. Defendant said that thereupon he refused to pay anything to Mrs. Beamer who had demanded $65 from him, $15 with which to buy the girl a long dress, and $50 for herself. Defendant denied that the girl had ever been at his stable. He said he was arrested for this crime about dark on Friday, May 23. He admitted having formerly been convicted of crime.

Defendant's witness, George B. Anderson, who sometimes worked for defendant, and who had recently

served a term in the Missouri penitentiary, as he admitted, denied that he went to the stable and got the girl on May 24. He said that she came to his room about 7 p. m. of the 23d of May, and about an hour later he went with her to East St. Louis, where they remained four days, when he went with her to Chicago. From Chicago they traveled to several points, and were married at Grand Haven May 31. He denied any knowledge of defendant being in trouble on account of the girl, and denied that his departure with the girl had any relation to defendant's case. Attorney Parker denied that he represented himself as a doctor, or examined the girl, or had sexual intercourse with her, but said that his brother, Doctor Parker, examined her. Doctor Parker testified that he examined the girl in a proper manner and found her diseased with gonorrhea. Dr. Mingos testified that about the early part of June, 1907, Anderson brought his wife, Florence, to him for examination, and that he found she had a case of gonorrhea, apparently of two or three weeks' standing, but he kept no record of the examination. Attorney Parker corroborated defendant as to the happenings at his office, and testified that the meeting there had been advised by him, without any intention of giving Mrs. Beamer money, but with a view to unfolding the blackmail scheme against defendant. In his cross-examination he said that defendant had been arrested many time for jobs of one sort or another.

At the close of the evidence the court instructed the jury. We do not deem it essential to reproduce in this statement all of the instructions given in this case, but will give those, the correctness of which are challenged by appellant, such attention as we may deem necessary during the course of the opinion. The cause was submitted to the jury and they returned the following verdict:

"*State of Missouri* vs. *William Baldwin.*

"We, the jury in the above-entitled cause, find the defendant guilty of habitual criminal and taking away a female for the purpose of concubinage, as charged in the information, and assess the punishment at imprisonment in the penitentiary for five years.

"R. H. DURAND, Foreman."

Timely motions for new trial and in arrest of judgment were filed and by the court overruled. Judgment and sentence were entered in accordance with the verdict and from this judgment the defendant prosecuted this appeal, and the record is now before us for consideration.

## OPINION.

In the record before us numerous complaints of error are assigned by learned counsel for appellant. We will give the errors complained of such attention as in our opinion the importance of them merits.

## I.

The sufficiency of the information is challenged on the ground that it fails to charge the defendant with taking away Florence Hamann, the prosecuting witness, from her father, who it is charged had her in his legal custody and under his control. We have in the statement of this cause reproduced the information upon which this judgment is based, and a careful analysis of the allegations embraced in it demonstrates that this objection is not well founded. This information is in harmony with precedents approved by this court. It is substantially in the same form as the information in the case of State v. Johnson, 115 Mo. 480, and State v. Jones, 191 Mo. 653, and both of those informations were held sufficient.

## II.

It is insisted by appellant that the court committed error in the admission of the statement of William Hamann, the father of the prosecuting witness, to the effect that he did not give his consent to his daughter going away with the defendant. It is sufficient to say of this objection that even conceding that this statement was immaterial, the admission of that testimony does not constitute reversible error, and in our opinion it was not incompetent to permit the father to say that he did not consent to the acts done by the defendant.

## III.

It is next earnestly urged by counsel for appellant that the admission of the records of the St. Louis Circuit Court and of the warden of the Missouri penitentiary, which showed a conviction, sentence and discharge of one William Baldwin upon a charge of rape, committed some time prior to the date alleged in the information of the taking away of the prosecuting witness for the purpose of concubinage, without identifying the defendant as being the same William Baldwin, constitutes such error as would authorize the reversal of this judgment. The defendant, while on the witness stand, admitted that he had been convicted of an offense prior to the one charged in the information, and while it is true that he did not state what the offense was, yet this, with the records as introduced showing that a defendant, William Baldwin, was convicted and sentenced and discharged from the penitentiary for the crime of rape, in the absence of any testimony to the contrary, was sufficient to submit that question to the jury and authorize them to find such fact against the defendant.

At this age of our jurisprudence, in the administration of the laws of the State, we have reached the

commendable stage that practical views must be taken in the trial of causes. Upon this trial the records were introduced showing that William Baldwin had been convicted, sentenced to the penitentiary and discharged therefrom for the commission of the offense of rape. There was no pretense, not even a suggestion or intimation, that the defendant charged in the information now before us was not the same William Baldwin, hence we are of the opinion that this contention is highly technical, and we are unwilling to disturb this verdict upon that ground.

## IV.

Appellant next insists that the court committed error in giving the second instruction to the jury. This instruction substantially told the jury that even if they should find that the prosecuting witness, Florence Hamann, was of unchaste character and had previously had sexual intercourse with the defendant, yet that state of facts did not constitute any defense to this action or prosecution. It is sufficient to say of this instruction that in cases of this character it has met the approval of this court.

In State v. Adams, 179 Mo. 334, the trial court gave a similar instruction to the one now under consideration. The jury were told in that case that should they believe from the evidence that the prosecuting witness was of easy virtue, or had previously had sexual intercourse with defendant, or had consented to go away with defendant, or that she consented to have sexual intercourse with defendant, yet none or all of these facts would constitute any defense to this prosecution. In that case all of the instructions were in judgment before this court, and the conclusion reached was that there was no reversible error in the record and the judgment was affirmed.

Complaint is also made to the third instruction

given by the court to the jury.    This instruction was as follows:

"By the word 'concubinage,' as used in the information and in these instructions, is meant the act or practice of a man cohabiting in sexual intercourse with a woman—a female with whom he is not married.

"If the jury believe and find from the evidence that the defendant, William Baldwin, did take the prosecuting witness, Florence Hamann, from her father, and that she was at the time a female under the age of eighteen years, for the purpose of cohabiting with her in sexual intercourse for any length of time for more than one single act of sexual intercourse, then the defendant is guilty of the crime charged in the information.

"If you find that the defendant did not so take the said Florence Hamann from her father, or did not take her for the purpose or with the intent to practice sexual intercourse with her, as explained in these instructions, or if you find that said Florence Hamann was at the time eighteen years of age, or over, then the defendant is not guilty of the crime charged, and you will so find."

It is sufficient to say of this instruction that what was said as to the second instruction is equally applicable to this one.    In State v. Adams, supra, an instruction substantially similar to instruction number 3, given in the case at bar, met the approval of this court.    We see no valid legal reason for departing from the conclusion reached in that case.

## V.

It is earnestly insisted that the court committed error in the giving of instruction number 4.    The complaint of error in that instruction is directed specially to the last paragraph, which is as follows:    "It is not

necessary that the defendant should have used any physical force in taking the said Florence Hamann away; it is sufficient in law if you find and believe from the evidence that defendant induced or persuaded the witness, Florence Hamann, to go away with him from her father's home for the purpose of having sexual intercourse with him, the defendant, William Baldwin.''

It is manifest that the court in this last paragraph was simply undertaking to direct the jury in respect to the nature and manner of the taking away of the prosecuting witness from her father, and, in order to fully appreciate that instruction, it must be considered in connection with the first paragraph, which reads as follows: ''The court further instructs the jury that in order to find the defendant guilty it is not necessary that the jury should find and believe from the evidence that the defendant, William Baldwin, took said Florence Hamann, the prosecuting witness, from the immediate possession, house or home of her father, William Hamann, but it is a sufficient taking away if the defendant took her, the said Florence Hamann, from the control and possession of her father, and took her out of the neighborhood in which she had lived prior thereto, so that her whereabouts were unknown to her father, the said William Hamann, without his consent.''

We are of the opinion that when the first and second paragraphs of this instruction are read in connection with all the other instructions in the case it does not constitute reversible error. While it may be that it would have been more in harmony with legal principles to have limited the second paragraph to an explanation of the manner of the taking away of the prosecutrix from her father, yet we are unwilling to say that the additional words used in that paragraph

constitute such reversible error as would authorize this court to reverse this judgment.

In State v. Johnson, supra, the first instruction on the part of the State in that case told the jury that if the defendant's purpose in taking the prosecuting witness away was to cohabit with her for a single night, then such taking away was for the purpose of concubinage within the meaning of the statute. The court in that case, speaking through Judge Burgess, in treating of this instruction, said substantially that admitting that the instruction is subject to the objection urged against it, and that the taking away for one act of intercourse or for one night does not come within the meaning of the statute and does not constitute the offense charged, yet when taken in connection with the other instructions it could not have misled the jury.

## VI.

It is next contended that the verdict of the jury is so informal as to render it insufficient to support the judgment. We quoted the verdict in the statement of this case, and while technically it is not in the best form, yet when the jury found the defendant guilty of habitual criminal and taking away a female for the purpose of concubinage, as charged in the information, it cannot be otherwise interpreted than that their reference to habitual criminal meant a finding of a former conviction, as charged in the information. In other words, the jury saw proper to call the charge of a former conviction, sentence and discharge from the penitentiary habitual criminal, and they found that he was guilty of habitual criminal and taking away a female, etc., as charged in the information.

It was not essential that the jury should make a specific finding of a former conviction. It was only necessary to make such finding as would clearly indi-

cate that in their finding they embraced the finding that the defendant had been formerly convicted, etc., as charged in the information. No one can read this verdict without reaching the conclusion that the jury found the defendant guilty of having been formerly convicted and sentenced to the penitentiary and discharged therefrom. We are unwilling to arrest this judgment or to in any way interfere with it on this ground.

## VII.

Appellant insists that the court committed error by its failure to require the jury, in its instructions to them, to find that the defendant was not married to the prosecuting witness. It is true that the instructions are open to this objection; however, in our opinion, it does not constitute reversible error. There was no pretense during the progress of this trial that the defendant and the prosecuting witness were married, and all the facts developed at the trial, beyond any sort of question, show that they were not married. The defendant himself admitted to Mrs. Beamer that the prosecuting witness was not his wife. In addition to this, the defendant's own witness, Anderson, testified that he was married to the prosecuting witness. In fact there was no issue upon the question of the defendant and the prosecuting witness being married or not married. It was practically conceded by the defendant and his counsel, and there is an entire absence of any testimony to the contrary, that the defendant and the prosecuting witness were not married. Therefore the failure of the court to require the finding of a fact which was practically admitted all through the trial, we do not think constitutes such error as would authorize the reversal of this judgment.

## VIII.

Finally, it is earnestly contended by learned counsel for appellant that the evidence in this cause is insufficient to support the finding of the jury. Upon that question it is sufficient to say that if the testimony on the part of the State was relied upon by the jury, it furnished ample support for the conclusions they reached. It goes without saying that if they believed the testimony as introduced by the defendant he was entitled to an absolute acquittal; but at last, it is for the jury to settle this conflict. They had the witnesses before them and a much better opportunity to judge of their credibility and the weight to be attached to their testimony than this court, and the rulings of this court are uniform that where there is substantial testimony to support the verdict it will not be disturbed on the ground that the testimony is conflicting. The evidence introduced upon the part of the State showing the conduct and actions of the defendant with this girl fully warranted the jury in finding the defendant guilty of the offense charged.

Again, the nature and character of this offense must not be overlooked. Judge GANTT, in State v. Knost, 207 Mo. 18, reviewed all of the authorities as to the essential elements of this offense, and after the citation of a number of cases, he said: "These cases all hold that the gravamen of this offense is the purpose or intent with which the enticing and abduction are done, and hence the offense, if committed at all, is complete the moment the subject of the crime is removed beyond the power and control of her parents or of others having lawful charge of her, whether any illicit intercourse ever takes place or not. Subsequent acts are only important as affording the most reliable means of forming a correct conclusion with respect to the original purpose and intent of the accused." Citing State v. Bussey, 58 Kan. 679.

We see no necessity for pursuing this subject further. We have carefully analyzed in detail the disclosures of the record and have given expression to our views upon the legal propositions involved, which results in the conclusion that the judgment of the trial court in this cause should be affirmed, and it is so ordered.

All concur.