JUAN HERNÁNDEZ RODRÍGUEZ, demandante y apelado, *v.* ANA DELIA RODRÍGUEZ, demandada y apelante.

Número 11007.

*Sometido:* 1 de febrero de 1954. *Resuelto:* 30 de junio de 1954.

*Antonio J. Matta,* abogado de la apelante; *Carmelo Ávila Medina* y *Ángel Luis Saavedra,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del Tribunal.

El 10 de octubre de 1952 el demandante interpuso la presente acción, alegando en su demanda, en lo pertinente, que contrajo matrimonio con la demandada en el mes de marzo de 1952 en Fajardo, sin que hubieran procreado hijos ni adquirido bienes; que la demandada desde hacía algún tiempo había estado "viviendo en público concubinato con otro señor en la Barriada Media Luna de Fajardo", siendo dicho concubinato de público y notorio conocimiento.

Contestó la demandada admitiendo el matrimonio y el hecho de no haber tenido hijos ni adquirido bienes, negando las demás alegaciones y aduciendo como defensa especial la de que la demanda no aducía hechos constitutivos de causa de acción.

Luego de un juicio en sus méritos, el tribunal a quo declaró con lugar la demanda, y en apelación la demandada sostiene que fué error (1) declarar sin lugar la defensa de que la demanda no aducía hechos constitutivos de causa de acción; (2) negar la eliminación del testimonio de Félix Díaz; (3) no sostener que hubo reconciliación entre las partes y condonación del alegado adulterio.

■■ Argumentando su primer señalamiento de error sostiene la apelante que la corte debió exigirle al demandante "que fuera precisa la demanda en cuanto al tiempo, sitio y persona con quien se cometió el adulterio."

Aun cuando la demanda no especifica las fechas en que tuvieron lugar las relaciones ilícitas entre la demandada y el *particeps criminis*, ni el nombre de éste, así como tampoco la casa o sitio preciso en que tuvieron lugar dichas relaciones, están presentes en ella, sin embargo, los elementos de tiempo y lugar y la naturaleza de la causal invocada.

La alegación de que "desde hace algún tiempo la demandada ha estado viviendo en público concubinato con otro señor en la Barriada Media Luna de Fajardo, Puerto Rico", junto a la alegación anterior de que era casada con el demandante, es suficiente para imputar la causal de adulterio, que se define en el Código Penal como el acto de "toda persona casada que voluntariamente tuviere comercio carnal con persona que no fuera su cónyuge." La frase "público concubinato" conlleva en sí la existencia de relaciones sexuales entre hombre y mujer, *State v. Baldwin*, 113 S.W. 1123, 1126, 214 Mo. 290; *Succession of Lannes*, 174 So. 94, 98,187 La. 17; *Henderson* v. *People*, 17 N.E. 68, 124 Ill. 607; *State* v. *Bussey*, 50 Pac. 891, 58 Kan. 679. *Cf. King* v. *United States*, 55 F.2d 1058, y usándose en una alegación respecto a una mujer casada es suficiente para imputar adulterio. Las frases "desde hace *algún tiempo*" y "ha estado" son expresión de continuidad en las relaciones ilícitas que se alegan hasta la fecha de presentación de la demanda, aun cuando no se precisa su punto de partida. Y la referencia a la "Barriada Media Luna de

Fajardo" es una expresión de sitio o lugar. En cualesquiera de estas circunstancias, así como en la de no mención del nombre del *particeps criminis*—aunque no se alegue que se desconoce el mismo, 2 A.L.R. 1625—la demandada pudo haber obtenido detalles adicionales bien por especificaciones o a través de interrogatorios, y no lo hizo.

La base para el segundo señalamiento puede sintetizarse así: (1) no habiéndose alegado el nombre del *particeps criminis*, no era competente la declaración de Félix Díaz, y (2) era inadmisible su declaración, ya que dicho testigo nunca declaró que los actos de adulterio tuvieran lugar en la Barriada Media Luna de Fajardo. Anteriormente indicamos que no era necesario alegar el nombre del *particeps criminis* y que la demandada pudo haber obtenido especificaciones con relación a éste y otros extremos de las alegaciones. El que no lo hiciera así no hacía incompetente o inadmisible la declaración de dicho testigo. Y si bien es cierto que éste declaró que no había tenido relaciones sexuales *en la casa* con la demandada, sí declaró que salía con ella "en San Rafael lo mismo que en Media Luna", que tenían relaciones sexuales, "que nos queríamos en el carro", que tuvieron "relaciones de marido y mujer" durante tres o cuatro meses "cuatro o cinco veces" mientras vivía en la Calle San Rafael, de Fajardo, de donde se trasladó luego la demandada a Media Luna, donde la visitó una o dos veces, pero que no tuvo relaciones sexuales en la casa.[1]

En casos de divorcio por adulterio, dada la naturaleza secreta y furtiva de la relación, es a veces difícil, si no imposible, determinar el momento preciso y lugar en que se realizó el acto, no siendo necesario que tal cosa se establezca en forma definitiva si el tribunal está convencido de que las relaciones ilícitas realmente tuvieron lugar. *Renner* v. *Renner*, 177 Md. 689, 12 A.2d 195. Véase además 127 A.L.R. 674.

---

[1] Estableció la prueba del demandante también que hubo relaciones sexuales en el automóvil en "los muros de Quebrada Palma", de Fajardo; que se les veía juntos "como que son marido y mujer" y que a veces tomaban una caseta en el Venecia, en Humacao.

■■ El tercer error señalado tiene su base en la siguiente conclusión de hecho: "En la noche del pasado martes 18 de noviembre, el demandante visitó la casa de la demandada sita en el barrio Media Luna de Fajardo y durmió en compañía de dicha demandada; esta prueba presentada por la parte demandada no ha sido negada por la parte demandante y no tenemos base alguna para desconsiderarla."

Sin embargo, entre sus conclusiones de derecho el tribunal sentenciador estableció la siguiente: "En el presente caso los hechos establecidos son claros, positivos y convincentes para determinar prueba concluyente de que la demandada ha cometido adulterio. Y no es posible a nuestro juicio admitir como prueba suficiente para establecer la existencia de la reconciliación o condonación, la afirmación·hecha por la demandada al efecto de que tuvo unión carnal con su esposo después de los hechos determinantes de la infidelidad."

No cometió el error que nos ocupa el tribunal sentenciador. Bajo los hechos de este caso estuvo bien aplicada por dicho tribunal la doctrina prevaleciente en esta jurisdicción al efecto de que el mero perdón del agravio no es suficiente, sino que es preciso que se continúe la unión de las partes y se restablezcan todos los derechos conyugales, de tal modo que el cónyuge culpable vuelva a ocupar la misma posición que ocupaba antes de que se cometiera la ofensa. *Díaz* v. *Torres,* 17 D.P.R. 501; *Bravo* v. *Franco,* 2 S.T.S. 422, 430. Reconciliación en el concepto de los arts. 103 y 104 del Código Civil, significa borrar la ofensa imputada en forma tal que el ofensor venga a ocupar respecto del ofendido la misma posición de que disfrutaba antes de la comisión del acto de adulterio. *Garrosi* v. *Dastas,* 2 S.T.S. 522, 527. El perdón de la ofensa y la reconciliación de las partes tienen que acreditarse con pruebas tales que no dejen dudas de ninguna clase. *Bravo* v. *Franco,* supra, y *Garrosi* v. *Dastas,* supra.' La prueba en este caso no justifica una afirmación en el sentido de que la posible relación sexual ocurrida tres días antes de la vista del caso en sus méritos situó a la esposa, respecto al marido,

en la misma posición que ocupaba antes de que cometiera la ofensa.    Ni se continuó la unión ni se restablecieron las relaciones y derechos conyugales permanentemente.

*No habiéndose cometido ninguno de los errores señalados, debe confirmarse la sentencia.*